Opinion issued May 4, 2006















In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00236-CR
____________

KENT HAMPTON, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 964,086
 

 
 
MEMORANDUM OPINION
A Harris County grand jury issued a true bill of indictment, accusing appellant,
Kent Hampton, of the felony offense of possession with intent to deliver a controlled
substance, namely cocaine, weighing at least 400 grams.


 After the trial court denied
his motion to suppress evidence, appellant entered a plea of guilty. The trial court
then deferred proceedings of appellant’s guilt, placed appellant on community
supervision for ten years, and assessed a fine of $1,000. In two points of error,
appellant contends that the trial court erred in denying his motion to suppress
evidence in violation of his rights under the Fourth and Fourteenth Amendments to
the United States Constitution


 and Article 1, Section 9 of the Texas Constitution.



We affirm.
Factual Background
          Houston Police Officer D. L. DeBlanc testified that, on October 7, 2003, he
conducted surveillance of a home located at 3410 Lapstone in connection with a
narcotics investigation. A police informant had arranged to buy cocaine from
Luzmarina Hoyas, the resident of the home, at a nearby Kroger grocery store. At
approximately 10:45 a.m., DeBlanc saw Luzmarina leave the home. Shortly
thereafter, police officers arrested her in the Kroger parking lot as she attempted to
deliver a kilogram of cocaine to the informant. DeBlanc heard, on his police radio,
that police officers had arrested Luzmarina. 
          After Luzmarina’s arrest, at approximately 10:55 a.m., DeBlanc saw appellant,
who was driving a Suburban truck, make a left-hand turn onto Lapstone Street
without using his turn signal. Appellant parked in the driveway of 3410 Lapstone and
exited his truck. At that point, DeBlanc drove toward the residence, exited his car,
and began to question appellant regarding his business at the residence. DeBlanc
denied initially approaching appellant with his hand on his gun. DeBlanc explained
that appellant was “extremely nervous to the point of visibly shaking” and “very
evasive.” Appellant told DeBlanc that he was there to deliver something and that he
did not know the occupants of the residence. Approximately three to five minutes
later, while DeBlanc was still investigating appellant’s connection to the location,
another male, identified as Harold Hoyas, arrived at the residence. DeBlanc told
appellant to remain where he was while DeBlanc questioned Harold. Harold
identified himself as Luzmarina’s son and told DeBlanc that appellant was his mom’s
boyfriend. DeBlanc explained that this contradiction further aroused his suspicions
regarding appellant. 
          Five to ten minutes after appellant’s initial detention, DeBlanc radioed Houston
Police Officer A. Vanderberry, the case agent at the location of the narcotics buy
between Luzmarina and the informant, seeking additional information. Vanderberry
told DeBlanc that the target of the undercover operation, Luzmarina, whom he had
detained at the Kroger parking lot, had told him that appellant was “an ounce
purchaser of cocaine.” Based upon his observation of the traffic offense, the
information obtained from Vanderberry, appellant’s arrival at a “dope location” that
was under surveillance, and appellant’s inconsistent story, DeBlanc detained
appellant until Vanderberry arrived at the home about ten minutes later. At
approximately 11:25 a.m., appellant signed a voluntary consent to allow officers to
search his truck. DeBlanc did not recover any contraband from the truck and did not
participate in further questioning or interviewing of appellant. 
          Officer Vanderberry testified that, on October 7, 2003, he saw Luzmarina, the
initial target of the narcotics investigation, deliver one kilogram of cocaine to the
informant. Vanderberry explained that DeBlanc subsequently contacted him to
discuss certain individuals that had arrived at Luzmarina’s residence. When
Vanderberry asked Luzmarina about appellant, she told him that appellant purchases
ounces of cocaine from her and is in the dump-truck business. Vanderberry then went
to the Lapstone location where he made contact with DeBlanc and appellant and
obtained appellant’s consent to search his truck. Vanderberry explained that after he
told appellant “we know what [is] going on,” appellant admitted to Vanderberry that
he buys cocaine from Luzmarina. Vanderberry also testified that, during his initial
conversation with appellant, appellant told him that he had narcotics at his residence.
Vanderberry then took appellant into the Hoyas’ residence, gave appellant his legal
warnings,


 and requested consent to search appellant’s residence, which appellant
gave. Officers took appellant to his home to conduct the search, which resulted in the
seizure of the cocaine made the basis of appellant’s indictment. 
          Appellant testified that he drove to the home of Luzmarina, a business
associate, to discuss dealings concerning their dump-truck company. When he
arrived at 3410 Lapstone, appellant saw Officer DeBlanc “trotting” toward the
driver’s side of his truck with “his hand on his pistol.” DeBlanc ordered appellant out
of his truck, instructed him to stand on the curb, and told him that he could not leave. 
DeBlanc then took appellant’s cellular telephone away from him. Appellant
explained that after “close to 30 minutes” officer Vanderberry arrived. Appellant
stated that he consented to a search of his truck because Vanderberry told him that he
would be free to go following the search. After officers found no contraband in
appellant’s truck, Vanderberry then presented appellant with a consent form to search
his home. Appellant explained that Vanderberry threatened that if appellant withheld
consent to search his home, he would “have [appellant’s] dump-trucks impounded,”
“bring the IRS in and seize [appellant’s] bank accounts,” and “drag [appellant’s] god
damn old wife through the house and throw her so far in jail that [appellant would]
never see her again.” After Vanderberry promised that he would leave appellant’s
wife alone and that appellant would receive probation, he signed the consent to search
his residence. Appellant signed the consent to search his residence although he felt
“like [Vanderberry was] violating some sort of rights.”
Standard of Review
          A trial court’s ruling on a motion to suppress evidence will not be set aside
unless an abuse of discretion is found. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); State v. Derrow, 981 S.W.2d 776, 778 (Tex. App.—Houston [1st
Dist.] 1998, pet. ref’d). We apply a bifurcated standard of review to a trial court’s
ruling on a motion to suppress evidence. Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
Almost total deference is given to a trial court’s determination of historical facts and
de novo review is given to a trial court’s application of the law to those facts. 
Guzman, 955 S.W.2d at 89. “[T]he trial court is the sole trier of fact and judge of
credibility of the witnesses and the weight to be given their testimony.” State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing the trial court’s decision,
an appellate court does not engage in its own factual review; it determines only
whether the record supports the trial court’s fact findings. Corea v. State, 52 S.W.3d
311, 315 (Tex. App.—Houston [1st Dist.] 2001, pet ref’d). Where, as here, a trial
judge does not make explicit findings of fact, we review the evidence in a light most
favorable to the trial court’s ruling. Walter v. State, 28 S.W.3d 538, 540 (Tex. Crim.
App. 2000). Because we do not determine credibility, our de novo review of
reasonable suspicion, probable cause, consent, and mixed questions of law and fact
become a de novo review of legal questions. Derrow, 981 S.W.2d at 778 (citing
Ornelas v. United States, 517 U.S. 690, 697–99, 116 S. Ct. 1657, 1661–62 (1996)).
Preservation of ErrorWe note, initially, that the State argues that appellant has not preserved error
with respect to his motion to suppress because the record does not expressly reflect
a ruling by the trial court. To preserve error on a claim of an illegal search or seizure,
an appellant must either obtain a ruling on a pretrial motion to suppress or object and
obtain a ruling at trial. Tex. R. App. P. 33.1(a) (Vernon 2003); Thomas v. State, 884
S.W.2d 215, 216 (Tex. App.—El Paso 1994, pet. ref’d). The record must clearly
reflect that the trial court, in fact, overruled the defendant’s objection or error is
waived. See Ramirez v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). 
However, in some instances, “a trial court’s ruling on a complaint or objection can
be impliedly rather than expressly made.” Rey v. State, 897 S.W.2d 333, 336 (Tex.
Crim. App. 1995). An appellate court may find that a trial court made an implicit
ruling on an objection when the objection was brought to the trial court’s attention
and the trial court’s subsequent action clearly addressed the complaint. See id.
(finding trial court implicitly overruled defendant’s objection when defendant twice
requested that trial court make ruling and then stated that court had denied his motion
and neither trial court nor State corrected that statement); Chappell v. State, 850
S.W.2d 508, 510 (Tex. Crim. App. 1993) (holding defendant’s objection to jury
shuffle was overruled when trial court granted State’s motion to shuffle); Ramirez,
815 S.W.2d at 650 (finding trial court implicitly overruled defendant’s objection to
State’s question by directing that witness answer question). The Court of Criminal
Appeals has explained that “[w]hile we require that a defendant’s objections be
specific enough to effectively communicate his complaint to the court, we are less
stringent in our requirements of the trial court’s ruling on an objection.” Rey, 897
S.W.2d at 336.
          Although the record reflects that a hearing was held on the motion to suppress,
no order expressly denying the motion appears in the record. On the same day of the
hearing, appellant pleaded guilty to the indicted offense. Along with appellant’s plea,
the record includes the judgment and sentence, the trial court’s certification of
appellant’s right of appeal, and appellant’s notice of appeal. A hand-written notation
on appellant’s notice of appeal, signed by the trial court, indicated that appellant gave
notice of appeal “as to the motion to suppress.” The trial court’s written sentence
includes provisions that are “waived pending appeal.” A docket entry reads “[a]t
10:05 a.m., came to be held defendant’s motion to suppress hearing . . . [T]he court
denied defense’s motion to suppress.” Given the particular circumstances of this
case, the record supports a finding of an implied denial of appellant’s motion. 
Cf. Flores v. State, 888 S.W.2d 193, 196 (Tex. App.—Houston [1st Dist.] 1994, pet.
ref’d) (holding that signed docket entry evidences trial court’s ruling on motion to
suppress evidence even where denial of motion to suppress appears nowhere else in
record).
          Next, the State argues that appellant presents nothing for review because he
“failed to establish a warrantless search or seizure and therefore failed to meet his
initial burden of proof.” The State also asserts that appellant failed to timely object
to his continued detention or the search of his home. 
A defendant seeking to suppress evidence on the basis of a Fourth Amendment
violation must allege the basis for a Fourth Amendment claim, such as that the search
or seizure occurred without a warrant. Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim.
App. 1986). The State must then establish either that the search or seizure was
performed under the authority of a warrant or that the warrantless search or seizure
was reasonable. Id. at 10; State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App.
1998). Here, the record reveals that appellant moved to suppress “any and all
evidence obtained as a result of [appellant’s] illegal, warrantless arrest.” Moreover,
at the hearing on the motion to suppress, the testimony of all the witnesses showed
that appellant’s truck and residence were searched as a result of appellant’s consent
and not the result of a warrant. Furthermore, at the conclusion of the motion to
suppress hearing, appellant’s trial counsel stated “[m]y argument would be simply at
the time that Officer DeBlanc initially detained [appellant], . . . he did not have a
reasonable suspicion based or articulable facts, which taken with rational inferences
from those facts would give him reasonable suspicion.” Counsel further asserted that
“the consent to search the residence was not voluntary and that taint from the illegal
detention was not attenuated.” As the lawfulness of appellant’s detention and search
as well as the voluntariness of his consent were the main issues contested at the
suppression hearing, we conclude that appellant has preserved these issues for
appellate review. See Gallups v. State, 151 S.W.3d 196, 198 n.1 (Tex. Crim. App.
2004) (holding that issue of consent was not waived because, though not included in
defendant’s written motion to suppress, consent “was main issue litigated at the
suppression hearing,” and stating that “we may . . . look to the issue actually litigated
at a suppression hearing to determine what issues and claims were preserved”).Illegal Search and Seizure
          In his two points of error, appellant argues that the trial court erred in denying
his motion to suppress evidence because he was unlawfully detained without
reasonable suspicion or probable cause. Appellant contends that “no reasonable
suspicion for his further detention existed after a negative search of his vehicle and
he should have been released.” Appellant also contends that “there is insufficient
evidence in the record to demonstrate that the consent was either voluntary or the
independent act of free will.”
Reasonable Suspicion 
          In general, a police officer’s decision to stop an automobile is reasonable when
the officer has probable cause to believe that a traffic violation has occurred. Walter
v. State, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000) (citing Whren v. United States,
517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996)). With the presence of an
objectively valid reason for stopping a car such as a traffic violation, the
constitutional reasonableness of a traffic stop does not depend on the actual
motivations of the individual officer involved. See Whren, 517 U.S. at 813, 116 S.
Ct. at 1774. 
          During this process, the officer may ask a motorist routine questions and the
officer may act on whatever information is volunteered. Mohmed v. State, 977
S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref’d). If the responses of the
detainee to the officer’s questions and the totality of the circumstances give rise to
suspicions unrelated to the traffic offense, an officer may broaden his inquiry and
satisfy those suspicions. See Powell v. State, 5 S.W.3d 369, 378–79 (Tex.
App.—Texarkana 1999, pet. ref’d). An investigative detention following a traffic
stop “may last as long as is reasonably necessary to effectuate the purpose of the stop,
including the resolution of reasonable suspicion.” United States v. Brigham, 382 F.3d
500, 512 (5th Cir. 2004) (quoting United States v. Sharpe, 470 U.S. 675, 686, 105 S.
Ct. 1568, 1575 (1985)). Reasonable suspicion exists if the officer has specific
articulable facts that, when combined with rational inferences from those facts, would
lead him to reasonably suspect that a particular person has engaged, is engaged, or
will soon engage in criminal activity. Garcia v. State, 43 S.W.3d 527, 530 (Tex.
Crim. App. 2001). An officer may also draw upon his experience and training to
assess the existence of reasonable suspicion. See United States v. Arvizu, 534 U.S.
266, 273, 122 S. Ct. 744, 751–52 (2002).
 Here, DeBlanc testified that he saw appellant commit the offense of turning
without signaling


 and thus, he had probable cause to arrest or detain appellant for
that offense. See Atwater v. City of Lago Vista, 532 U.S. 318, 121 S. Ct. 1536, 1557
(2000); State v. Gray, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005). Appellant
had also arrived at a location that was under surveillance in connection with an
undercover narcotics investigation. DeBlanc explained that “based on [his]
education, training, and experience, sometimes another person brings the drugs, the
big quantity of drugs [to a narcotics buy].” At that point, it was not unreasonable for
DeBlanc to ask appellant questions to determine his identity and to try to obtain
information confirming or dispelling any suspicions DeBlanc may have had
concerning whether appellant was engaged in, or soon would engage in criminal
activity. See Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). 
Moreover, DeBlanc testified that appellant was “extremely nervous” and “very
evasive” when he began to question him about the nature of his visit to the Lapstone
residence. Although appellant stated that he was there to deliver something to the
residence, he had nothing with him and stated that he did not know anybody there. 
While DeBlanc was conducting his initial investigation, Harold arrived, and
DeBlanc’s interview of Harold revealed inconsistencies in appellant’s story. At that
point, DeBlanc contacted Vanderberry to continue the investigation. DeBlanc stated
that he detained appellant for “maybe five to ten minutes” before receiving
information from Officer Vanderberry through Luzmarina that appellant was “an
ounce purchaser of cocaine.” 
          At the suppression hearing, DeBlanc explained that the reason for his
continued detention of appellant was a combination of the traffic violation,
appellant’s arrival at “a dope location that we had under surveillance,” appellant’s
misrepresentations regarding his knowledge of and relationship with individuals at
the residence, and Vanderberry’s statement that the detained target of the narcotics
investigation had told officers that appellant was a “purchaser of ounces of cocaine.” 
When Vanderberry arrived at the Lapstone location, he told appellant, “we know what
[is] going on,” and appellant admitted that he buys cocaine from Luzmarina. 
Vanderberry explained that he continued to detain appellant, even after a negative
search of his truck, because appellant told Vanderberry that “he had dope in his
residence.” Vanderberry testified that it was soon after the search of appellant’s truck
that appellant consented to the search of his home.
           As noted, an officer is entitled to rely on all of the information obtained during
the course of his contact with the citizen in developing the articulable facts which
would justify a continued investigatory detention. Mohmed, 977 S.W.2d at 628. 
Here, after the initial traffic stop, the facts obtained by DeBlanc and Vanderberry
during their investigations justified the continued investigative detention of appellant.
Voluntariness of Search
          A search after voluntary consent is not unreasonable. See Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000). When the State is relying upon consent to
excuse the warrant requirement, it must prove by clear and convincing evidence that
the defendant gave his consent freely and voluntarily.


 Corea, 52 S.W.3d at 315–16. 
Hence, the State must show that the consent was positive and unequivocal and not
merely an acquiescence to a claim of lawful authority. Id. 
          Here, Vanderberry testified that appellant told him that “he had dope at his
residence.” In contrast, appellant asserted that he agreed to give consent to search his
home only after the officers made coercive threats. When asked whether he had told
appellant that he would “not involve his wife” if appellant consented to a search of
his home, Vanderberry testified, “[t]hat [was] not correct.” Vanderberry also denied
telling appellant that he would tell the district attorney about appellant’s cooperation
if he consented to the search of his home. Testimony by law enforcement officers
that no coercion was involved in obtaining the consent is evidence of the consent’s
voluntary nature. Martinez v. State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000). It
is the trial court’s prerogative to resolve any inconsistencies and conflicts within the
evidence. See id. “Appellate courts . . . should afford almost total deference to a trial
court’s determination of the historical facts that the record supports especially when
the trial court’s fact findings are based on an evaluation of credibility and demeanor.”
Guzman, 955 S.W.2d at 89. Giving almost total deference to the trial court’s
evaluation on the credibility and demeanor of the witnesses in this case, the trial court
was free to disregard appellant’s testimony and believe the police officers. See
Martinez, 17 S.W.3d at 683. Viewing the totality of the circumstances surrounding
the statement of consent, we conclude that the record supports a finding that
appellant’s consent was freely and voluntarily given. 
          Given the above evidence, the trial court could have reasonably concluded that
appellant was not unlawfully detained and that appellant voluntarily consented to the
search of his residence. Accordingly, we hold that the trial court did not abuse its
discretion in denying appellant’s motion to suppress evidence.We overrule appellant’s two points of error.
 
Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).