**Juan Carlos COREA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–98–01351–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 28, 2001.

Randy Martin, Houston, Appellant.

John B. Holmes, Dan McCrory, Houston, for State.

Panel consists of Justices COHEN,

WILSON, and PRICE.[1]

## OPINION

WILSON, Justice.

The trial court found appellant, Juan Carlos Corea, guilty of possession with intent to deliver of four grams or more, but less than 200 grams, of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp. 2000). The trial court assessed punishment at 10–years imprisonment and a $1,000 fine. The trial court then probated appellant's confinement and placed appellant on 10–years community supervision. Appellant appeals with two points of error. We reverse.

### Facts

In the course of a burglary investigation, Houston police officers obtained information from the burglary suspect that he had turned stolen property over to appellant. Officers Stivers, Wiener, and Cobbs wanted to speak with appellant about a stolen Rolex watch and two diamond rings, and the officers went to the apartment complex where appellant lived. The officers initially spoke with the apartment manager, learning that appellant and his mother were co-lessees and that appellant's brother, sister, and brother-in-law (Selvin Yaguas) also occupied the apartment, but were not lessees.

The officers then went to appellant's apartment. Yaguas, appellant's brother-in-law, answered the door and informed the officers that no one else was present. The officers asked for Yaguas's written consent to search the apartment, which he gave. Yaguas showed the officers appellant's room and told them appellant was the room's only occupant. The door was

open, and there were no locks on the door. While searching appellant's room, Officer Weiner found a paper bag containing cocaine in appellant's closet. At trial, appellant stipulated to the admission of the cocaine.

Appellant's trial counsel cross-examined Officer Stivers as follows:

Q ... [W]hile you were in the apartment, Selvin Yaguas, when he pointed out the defendant's bedroom, he told you, no one else lives in that bedroom but the defendant, didn't he?

A. That's correct, sir.

Q. And that's what's—okay.

Did you ask him at that moment if this is the defendant's bedroom and no one lives there but him, how is it you are giving me consent to search that bedroom?

A. No, sir. There was no lock on the door, the door was open and I was getting the consent to search the premises.

Q. Is it your answer you didn't ask Mr. Yaguas any more questions about that bedroom after he told you this is the defendant's bedroom, no one lives in it but the defendant?

A. That's correct.

Q. All right. Did he sign the consent form before he told you that was the defendant's bedroom and no one lives there but the defendant?

A. I don't recall.

This was the only evidence presented regarding Yaguas authority to consent to the search of appellant's bedroom.

The trial court made the following oral findings of fact and conclusions of law:

---

**1.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

THE COURT: Your basis for the Motion to Suppress is Rearden [sic] v. State, the Austin case I believe where the people went to the residence; they got consent to search the premises from a lady who lived on the property, property meaning the actual ground but in a dwelling different and apart from the residence or habitation or habiliment [sic] that were actually in fact served. Excuse me, that is not the case and I find this case distinguishable.

The officers went to the manager's office. They checked and found not only the defendant on the lease but the others on the lease. I think they were acting properly within the scope of their tip and their investigation of the case.

I think they had that information properly before them. They determined that Selvin Yaguas has apparent authority to allow them in the premises and give consent to search.

Now—so, therefore, I find that they were properly in the place and had apparently authority and actual consent to search the premises.

It wasn't like they found a third person there who had absolutely no connection to the premises and then relied on that, just a facial or pretextual consent to search.

The Court finds they did have consent to search the premises. Now whether the Court of Appeals when they grade my papers agrees with me or agrees with you, that's another moment [sic].

### Discussion

In point of error one, appellant claims the trial court erred in denying his motion to suppress. Appellant relies on the opinion of the Austin Court of Appeals in *Riordan v. State*, which is the same case he argued before the trial court. *Riordan*, 905 S.W.2d 765 (Tex.App.—Austin 1995, no pet.). We agree with appellant that the reasoning and holding in *Riordan* are applicable to the facts of this case.

 In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim.App.1991); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court may accept or reject all or any part of a witness's testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim. App.1980). In reviewing the trial court's decision, an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's fact findings. *Romero*, 800 S.W.2d at 543. If the trial court's fact findings are supported by the record, an appellate court is not at liberty to disturb the findings absent an abuse of discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim.App.1991); *Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Crim.App.1987). On appellate review, the court will address only the question of whether the trial court properly applied the law to the facts. *Romero*, 800 S.W.2d at 543.

 The basic purpose of the Fourth Amendment to the United States Constitution is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *See Berger v. New York*, 388 U.S. 41, 53, 87 S.Ct. 1873, 1880, 18 L.Ed.2d 1040 (1967); *Juarez v. State*, 758 S.W.2d 772, 775 (Tex. Crim.App.1988), *overruled on other grounds by Boyle v. State*, 820 S.W.2d 122, 132 n. 10 (Tex.Crim.App.1989).

 One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412

U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). The protections afforded by the Fourth Amendment may be waived by an individual consenting to a search. *Paprskar v. State,* 484 S.W.2d 731, 737 (Tex.Crim.App.1972), *overruled on other grounds by Kolb v. State,* 532 S.W.2d 87, 89–90 n. 2 (Tex.Crim.App.1976).

■ When relying upon consent to justify the lawfulness of a search, the State has the burden to prove by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968); *see also Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045; *Paprskar,* 484 S.W.2d at 737. The burden requires the prosecution to show that the consent was positive and unequivocal, and there was no duress or coercion. *Juarez,* 758 S.W.2d at 775. The burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Bumper,* 391 U.S. at 548–49, 88 S.Ct. at 1791–92; *Paulus v. State,* 633 S.W.2d 827, 850 (Tex.Crim.App.1981). Consent to search is not to be lightly inferred. *Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Crim.App.1985). The question of whether a consent to search was "voluntary" is a question of fact to be determined from the totality of the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48; *Paulus,* 633 S.W.2d at 850.

■ A warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of "unreasonable searches and seizures" if the officers have obtained the consent of a third party who possesses common authority over the premises or effects sought to be inspected. *United States. v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 992, 39 L.Ed.2d 242 (1974). "Common authority" rests "on mutual use of property by persons generally having joint access or control for most purposes." *Id.,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. A third party may properly consent to a search when the party has equal control over and equal use of the premises being searched. *Becknell v. State,* 720 S.W.2d 526, 528 (Tex.Crim.App.1986).

■ As in *Riordan,* appellant does not challenge the voluntariness of the consent given by his brother-in-law. Appellant instead argues that Yaguas simply had no authority to grant vicarious consent to search his bedroom.

At the hearing on the motion to suppress, the State did show that Yaguas had common authority over the apartment other than appellant's bedroom. Yaguas was listed as an occupant of the apartment, although he was not a party to the lease. However, Yaguas told the officers that no one other than appellant lived in appellant's bedroom, which negated Yaguas's actual authority over the bedroom. Appellant obviously had the right to exclude Yaguas from entering or using his bedroom. There was no evidence that appellant gave explicit or implicit consent to Yaguas to enter or use appellant's bedroom. In addition, there was no evidence that Yaguas ever entered appellant's bedroom, with or without appellant's consent.

■ The State argues there is evidence that Yaguas had common authority over appellant's bedroom because there was no lock on the bedroom door and the door was open. We disagree. While a lock on the door would be compelling evidence that Yaguas has no common authority over the bedroom (assuming Yaguas had no key), it is a logical fallacy to say that the absence of a lock, without any other evidence, is sufficient evidence to show Yaguas had common authority over the bedroom. We do not believe the law requires people to close and lock their bedroom

doors to foreclose a conclusion that anyone with access to the common areas of a house or apartment also has access to their bedroom. An unlocked door is not an invitation to enter.

 When the facts do not support a finding of actual authority, a search is reasonable if the consent-giver apparently has actual authority. *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990). In *Rodriguez*, the Supreme Court held that a warrantless entry by law enforcement officers onto a person's premises does not violate the proscription of unreasonable searches and seizures under the Fourth Amendment, when such entry is based upon the consent of a third party whom the officers, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not possess such authority. Whether the basis for a person's authority to consent to a search exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment, and all that the Fourth Amendment requires is that they answer such question reasonably. If officers reasonably believed that the third party had common authority over the place to be searched, then their good faith mistake will not invalidate the search. This does not mean, however, that they may rely upon consent given in ambiguous circumstances or that clearly appears unreasonable. *Id.*, 497 U.S. at 186–89, 110 S.Ct. at 2800–01. The apparent authority doctrine for consenting to a search should not be applied so strictly that it becomes unworkable and places too heavy a burden on police. The rule, however, does not allow law enforcement officers to proceed without inquiry into ambiguous circumstances or to always accept at face value the consenting party's apparent assumption or claim of authority

to allow the contemplated search. *Riordan*, 905 S.W.2d at 771.

 The State bears the burden of proving that the person who gave consent had the actual or apparent authority to do so. *Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797; *Krise v. State*, 746 N.E.2d 957, 967 (Ind.2001). The burden cannot be met if officers, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the officers do not learn enough and if the circumstances make it unclear whether the property is subject to "common authority" by the person giving consent, "then warrantless entry is unlawful without further inquiry." *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801.

 In this case, the police officers conducted a reasonable investigation to determine that Yaguas had apparent actual authority by virtue of the fact he was listed as an occupant of the apartment. However, Yaguas's authority to consent to a search of appellant's bedroom became ambiguous once he told the officers no one other than appellant lived in appellant's bedroom. At that point, the officers were either obligated to investigate further to determine if Yaguas truly had the authority to consent to a search of the bedroom or to obtain a search warrant. We conclude the trial court erred in denying the motion to suppress because the State did not sustain its burden to establish Yaguas had actual or apparent authority to consent to the search.

 We next determine if the error constitutes reversible error. *See* Tex. R.App. P. 44.2. The error here is constitutional error because an improper search by the State violates both the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. *See* Tex.R.App. P. 44.2(a). We determine that the error

contributed to appellant's conviction because the police discovered the contraband, which they knew nothing about, as a result of the invalid search. *See id.* Accordingly, we hold that the error was reversible error.

We sustain point of error one. Due to our ruling on point one, we do not reach point of error two.

We reverse the trial court's judgment and remand the case to the trial court so appellant can answer to the indictment.

Justice COHEN concurring, joined by Justice PRICE.

## CONCURRING OPINION

Justice COHEN, concurring.

In this close case, my vote is tipped towards reversal because:

1. There is a constitutional preference for search warrants, all warrantless searches are presumed to be unreasonable, the burden of proof is on the government to justify warrantless searches, and no place is more entitled to privacy than one's bedroom.
2. While Yaguas had authority over the apartment's common areas, no evidence showed his actual authority to permit a search of noncommon areas, such as appellant's bedroom. Even though the State relied completely on Yaguas's actual or apparent authority, the State did not present Yaguas's testimony, did not attempt to do so, and did not explain his absence.
3. The combination of living under the same roof as one's brother-in-law and leaving one's bedroom door unlocked and opened does not imply that the brother-in-law has authority to search the bedroom's hidden recesses or allow the government to do so. *See Reynolds v. State,* 781 S.W.2d 351, 355 (Tex.

App.—Houston [1st Dist.] 1989, pet. ref'd) (right to privacy is not lost or delegated to child residents by leaving them briefly in charge of defendant's home).