In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-02-00660-CR
____________

JOEY KIRK WHISENHUNT, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 1st County Court 
Brazos County, Texas
Trial Court Cause No. 3981-01 




O P I N I O N
         Appellant, Joey Kirk Whisenhunt, was charged with the offense of possession
of marihuana in an amount less than two ounces. After a hearing at which appellant’s
motion to suppress evidence was denied, appellant pleaded guilty to the offense, and,
in accordance with a plea agreement, the trial court placed appellant on two years’
probation and imposed a $1,500 fine.
          In five points of error, appellant contends that the trial court erred in denying
his motion to suppress evidence because the search of his private bedroom and the
seizure of marihuana located therein violated his right to be free from unreasonable
searches and seizures.


 We affirm. 
Background
          While appellant was out of town, his trailer home was burglarized. His
roommate, Bradley Wunderlich, reported the burglary of the trailer to the Bryan
Police Department, and Officer Garland Davis was dispatched to the scene. 
Wunderlich invited Davis into the trailer, told him that the trailer had been
burglarized, and consented to Wunderlich’s processing of the trailer for evidence of
the burglary, including the lifting of possible fingerprints. 
          Davis was “shown around” the trailer by Wunderlich and observed that the
trailer home had been ransacked. Wunderlich gave Davis an inventory of what was
missing from his bedroom and what he thought was missing from the living room. 
Wunderlich did not know what, if anything, was missing from appellant’s bedroom.
Wunderlich told Davis that appellant owned the trailer and was out of town on a
hunting trip. 
           Davis dusted for fingerprints in the living room, in Wunderlich’s bedroom, and
in appellant’s bedroom. According to Davis, appellant’s bedroom door was not
locked, but he could not recall if the door was opened or closed when he entered the
room. 
          Davis observed that appellant’s bedroom had also been burglarized and
ransacked. Appellant’s computer table had been pulled away from the wall, the
computer terminal was turned around, drawers had been pulled open, and boxes were
pulled from inside the closet. Davis noticed a jewelry box on appellant’s nightstand
with an open lid “as if someone had rummaged through the box” and dusted it for
fingerprints. While lifting the upper tray of the jewelry box to determine whether the
items in the box were still in place or had been stolen, Davis discovered marihuana
in the bottom of the box. Beneath the marihuana was a document bearing appellant’s
name. Davis seized the marihuana and told Wunderlich that marihuana was found in
appellant’s bedroom. 
          At the motion to suppress hearing, Davis testified that he believed that
Wunderlich’s permission to process the trailer included permission to process
appellant’s bedroom. Davis stated that he did not know whether appellant used the
bedroom exclusively or whether appellant had given Wunderlich prior consent to use
appellant’s bedroom or the personal belongings in the bedroom. Davis acknowledged
that he did not have a warrant to search appellant’s bedroom, but stated that he did
not believe one was necessary because he was inside the trailer at Wunderlich’s
invitation and was processing the bedroom as part of the overall scene of a burglary
in which appellant was a victim and not a suspect. Davis said that his sole purpose
in entering appellant’s bedroom was to process for fingerprints while conducting an
investigation of the burglary. 
          Appellant testified that he rents a bedroom to Wunderlich pursuant to an oral
lease agreement. Appellant admitted that the marihuana was his, but testified that he
did not give his roommate or Officer Davis permission to enter his room to search for
evidence of the burglary.
Discussion
          In five points of error, appellant contends that the trial court erred in denying
his motion to suppress the marihuana found in his bedroom. In a suppression hearing,
the trial court is the sole trier of fact and judge of the credibility of the witnesses and
the weight to be given their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). The trial court may accept or reject all or any part of a witness’s
testimony. Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). In
reviewing the trial court’s ruling on a motion to suppress, an appellate court does not
engage in its own factual review and determines only whether the record supports the
trial court’s fact findings. Romero, 800 S.W.2d at 543. If the trial court’s fact
findings are supported by the record, an appellate court may not disturb the findings
unless the trial court abused its discretion. Cantu v. State, 817 S.W.2d 74, 77 (Tex.
Crim. App. 1991). On appellate review, we address only the question whether the
trial court properly applied the law to the facts. Romero, 800 S.W.2d at 543.
          In denying appellant’s motion to suppress, the trial court found that, although
Davis conducted a warrantless search of appellant’s bedroom, his search was
reasonable because (1) Wunderlich had “apparent authority” to authorize a search of
appellant’s bedroom, (2) appellant “impliedly consented” to the search, and (3) Davis
reasonably conducted a criminal investigation at the scene of a crime. Because we
find that Davis conducted his search pursuant to Wunderlich’s apparent authority to
consent to the search, we will affirm the judgment of the trial court. 
Apparent Authority
          Under the Fourth Amendment, all warrantless searches inside a home are
unreasonable per se unless the State proves that the particular search falls within a
recognized exception to the constitutional requirement for a warrant. United States
v. Karo, 468 U.S. 705, 714-15, 104 S. Ct. 3296, 3303 (1984); Walter v. State, 28
S.W.3d 538, 541 (Tex. Crim. App. 2000). A warrantless search by law enforcement
officers does not violate the Fourth Amendment’s guarantee against unreasonable
searches and seizures if the officers have obtained the consent of a third party who
possesses common authority over the premises or effects sought to be inspected. 
United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974). “Common
authority” rests on “mutual use of property by persons generally having joint access
or control for most purposes.” Id., 415 U.S. at 171 n.7, 94 S. Ct. at 993 n.7. A third
party who has equal control over and equal use of the premises being searched may
properly consent to a search of those premises. Becknell v. State, 720 S.W.2d 526,
528 (Tex. Crim. App. 1986). 
          When the facts do not support a finding of actual authority, a search maybe
reasonable if the consent-giver apparently has authority. Illinois v. Rodriguez, 497
U.S. 177, 188, 110 S. Ct. 2793, 2801 (1990). In Rodriguez, the Supreme Court
adopted the apparent-authority doctrine, holding that a warrantless search of a
person’s premises by law enforcement officers does not violate the Fourth
Amendment when the search is based upon the consent of a third party whom the
officers reasonably believe at the time of the search to possess common authority over
the premises, but who in fact does not possess such authority. Id., 497 U.S. at 186-89,
110 S. Ct. at 2800-01. As the Supreme Court stated, a third party’s consent is valid
if “the facts available to the officer at the moment [would] warrant a man of
reasonable caution in the belief that the consenting party had authority over the
premises.” Id., 497 U.S. at 188, 110 S. Ct. at 2781. The State has the burden to prove
apparent authority. Id., 497 U.S. at 181, 110 S. Ct. at 2797. The burden is not met
if law enforcement officers faced with an ambiguous situation nevertheless proceed
without making further inquiry. Id., 497 U.S. at 186-89, 110 S. Ct. at 2800-01. If the
officers do not learn enough and if the circumstances fail to clarify whether the
property is subject to common authority by the consent-giver, then the warrantless
search is unlawful. Id.
          In overruling appellant’s motion to suppress, the trial court concluded that it
was reasonable for Davis to believe that Wunderlich’s authority to consent to the
fingerprinting and processing of the common areas of the trailer extended beyond
those areas and into appellant’s bedroom. We conclude that the trial court did not
abuse its discretion in determining that Davis reasonably believed that Wunderlich
had apparent authority to give consent to enter appellant’s bedroom.
          The trial court focused on the reasonableness of Davis’s and Wunderlich’s
actions. Wunderlich led Davis to appellant’s bedroom. As Davis testified, “Mr.
Wunderlich pointed me toward his roommate’s bedroom, advised me that it appeared
that things were askew, things were not left the way he normally leaves his room. 
That’s what prompted me to go toward his bedroom and investigate.” The record
reflects that Wunderlich did not give Davis separate consent to enter appellant’s
bedroom apart from the consent for the remainder of the trailer. Wunderlich did,
however, lead the officer to appellant’s room. Given that conduct, it was reasonable
for the officer to conclude that the consent for the trailer included appellant’s room. 

          According to Davis, Wunderlich consented to his entering the trailer, consented
to the processing of the trailer, and made no restrictions on either consent. As the
trial court noted, “. . . it was clear and obvious to Officer Davis that the Defendant’s
bedroom had been ransacked and was, therefore, part of an overall crime scene.” Not
only did Wunderlich give consent to have Officer Davis enter and process the trailer,
the record further reflects that Wunderlich specifically sought police assistance into
the appellant’s room and not merely as to the common areas of the trailer. 
          In addition to concluding that Wunderlich led Davis to appellant’s bedroom,
the trial court further concluded that it was reasonable for Davis to believe that
appellant had expressly or impliedly consented to Wunderlich’s request for assistance
from police officers. As the court emphasized, “. . . it is reasonable to believe that an
absent roommate would want a law enforcement officer to do a thorough
investigation of the crime scene as quickly as possible based upon the consent of the
other roommate there on location, in the event the roommate’s apartment or house or
mobile home were the scene of a crime, assuming that neither roommate was the
accused or the object of that crime being investigated.” It was reasonable for Davis
to believe that, because appellant and Wunderlich were victims of a burglary and 
shared a common loss due to the acts of an unknown third party, Wunderlich had
authority to consent to the officer’s search for evidence of the burglary in appellant’s
room. Given Wunderlich’s conduct, both in leading the officer to appellant’s
bedroom and in showing the officers the signs of the burglary in the bedroom, Davis
could reasonably believe that the roommates had the type of relationship that would
permit access into each other’s bedrooms in an extraordinary circumstance like the
burglary that occurred here, in much the same manner as if the home had flooded or
if a fire had occurred. 
          In focusing on Davis’s motives in entering appellant’s bedroom, the trial court
noted that neither Wunderlich nor appellant was a target of an investigation or
suspected of an offense.


 In entering the bedroom, Davis’s stated purpose was simply
to assist appellant in pursuit of the burglars. The court noted that it would be illogical
to believe that appellant or Wunderlich had burglarized their own home and,
therefore, neither appellant nor Wunderlich was suspected of any offense when the
officer entered appellant’s bedroom. 
          The trial court determined that Davis’s actions in searching the jewelry box
were reasonable because the “jewelry box is a logical attraction to a burglar.” The
court noted,In plain view for the Officer to see, the tray to the jewelry box was
empty. It was reasonable (logical) for the Officer to conclude that the
jewelry box had been part of the burglar(s)’s prey and it was logical for
the Officer to dust for fingerprints. 
 
We conclude that Davis’s actions did not exceed the scope of the investigation of the
burglary that he was invited to investigate. 
          Appellant relies on this Court’s opinion in Corea v. State, 52 S.W.3d 311 (Tex.
App.— Houston [1st Dist.] 2001, pet. ref’d), to challenge Wunderlich’s consent. We
conclude Corea is factually distinguishable. Corea involved the State’s attempt to
validate a warrantless search conducted with the consent of a third party whom the
State alleged had apparent authority. Id. at 315. After police officers received a tip
that the defendant possessed stolen property, the officers went to the defendant’s
apartment and received written consent to search the apartment from the defendant’s
brother-in-law, who was a resident of the apartment. The officers then conducted a
search of the defendant’s bedroom and discovered a paper bag containing cocaine. 
The trial court found that the brother-in-law had apparent authority to consent to the
search and denied the defendant’s motion to suppress. Id. at 314-15. 
          In reversing the trial court’s judgment, we first noted that the State presented
no evidence to show that the defendant gave his brother-in-law explicit or implicit
consent to enter or use the defendant’s bedroom. Id. at 316. Furthermore, we noted
that the State presented no evidence that the brother-in-law ever entered the
defendant’s bedroom, with or without the defendant’s consent. Id. We therefore held
that once the officers received notice that the defendant lived in the bedroom, the
officers were obligated to investigate further to determine if the brother-in-law truly
had authority to consent to a search of the bedroom. Id. at 317. Because the officers
did not investigate further, we reversed the judgment of the trial court. Id. at 318; see
also Riordan v. State, 905 S.W.2d 765, 772 (Tex. App.—Austin 1995, no pet.)
(holding that baby-sitter living in home connected via ramp to defendant’s home had
no authority to consent to search of defendant’s home); Reynold v. State, 781 S.W.2d
351, 355 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d) (holding that child
residents had no actual or apparent authority to consent to search of mother’s home). 
          Unlike Corea, appellant was never suspected of a crime. He was a victim. In
Corea, the officers initiated the police contact with the home occupants. See Corea,
52 S.W.3d at 314. Here, Davis responded to Wunderlich’s call for assistance and was
invited into the home by Wunderlich, who led Davis to appellant’s bedroom to
investigate the burglary. There were no extraordinary circumstances in Corea that
correspond to the circumstance of the burglary here and that would cause an officer
to believe that a roommate who was not present would want the police action
requested by a roommate who was present. 
          We are persuaded that the circumstances presented here are similar to those in
Illinois v. Rodriguez. In Rodriguez, the officers were granted access inside a home
by a woman who represented that the apartment was “our[s]” and that she had clothes
and furniture there. 497 U.S. at 180, 110 S. Ct. at 2797. The woman unlocked the
door with her key and gave officers permission to enter. Id. She did not, however,
have actual authority to consent to the officer’s entry because she had moved out of
the apartment and was not living there. Id. After noting that it was not clear whether
the woman told the officers that she currently lived at the apartment or that she
merely lived there once, the Court held that searches could be valid under the
apparent authority rationale. Id., 497 U.S. at 188, 110 S. Ct. at 2801. As the Court
instructed, “Whether the basis for such authority exists is the sort of recurring factual
question to which law enforcement officials must be expected to apply their
judgment; and all the Fourth Amendment requires is that they answer it reasonably.” 
Id., 497 U.S. at 186, 110 S. Ct. at 2800. Because many situations that confront
officers in the course of executing their duties “are more or less ambiguous, room
must be allowed for some mistakes on their part.” Id. (citing Brinegar v. United
States, 338 U.S.160, 176, 69 S. Ct. 1302, 1311 (1949)). Mistakes, however, “must
be those of reasonable men, acting on facts leading sensibly to their conclusions of
probability.” Id. (citing Brinegar, 338 U.S. at 176, 69 S. Ct. at 1311). 
          As addressed above, Davis was reasonable in searching appellant’s bedroom
because, as in Rodriquez, he was led to the room by a person who appeared to have
authority to consent to the search. See id., 497 U.S. at 188, 110 S. Ct. at 2801. We
thus conclude that the trial court did not abuse its discretion by finding that the State
met its burden of proof to establish that Davis acted reasonably under the
circumstances by relying on Wunderlich’s apparent authority to consent to the search. 
Because the court’s ruling can be upheld on the grounds of apparent authority, we
need not address appellant’s other contentions, in which he challenges the trial court’s
finding of a crime scene exception and implied consent. 
Conclusion
          We affirm the judgment of the trial court.


 
 
Elsa Alcala
Justice

Panel consists of Justices Hedges, Jennings, and Alcala.

Justice Jennings, dissenting.

Publish. Tex. R. App. P. 47.2(b).