NO. 07-10-00266-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 25, 2011

_____

DEBORAH A. PEREA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

NO. 2008-452,099; HONORABLE LARRY B. "RUSTY" LADD, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.


**MEMORANDUM OPINION**


Appellant, Deborah A. Perea, appeals her conviction by a jury for the offense of possession of marijuana in an amount of not more than two ounces.[1] The same jury assessed her punishment at confinement in the Lubbock County Jail for a term of 105 days and a fine of $2,000. Appellant appeals contending that the trial court committed reversible error by denying her motion to suppress the evidence seized by the police

_____

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b) (West 2010).

after they gained entry into the residence where appellant was found.  We will affirm the judgment of the trial court.

## Factual and Procedural Background

On August 16, 2008, at approximately 4:15 a.m., officers of the Lubbock Police Department were dispatched to 1109 43rd Street in reference to a 911 hang-up call. The officers that went to the location were Officers Carroll and Comacho.  The testimony at trial developed that, as a matter of policy, officers are always dispatched to the location of a 911 hang-up call.  This is so because the person making the call could have been forced to hang up in a domestic violence situation or could be suffering a medical condition that resulted in a hang-up.  In general, the officers are attempting to conduct a welfare check when they are dispatched on a 911 hang-up.

Officer Carroll was the lead officer responding to the call.[2]  Upon arrival at the residence, Officer Carroll went to the front door and knocked.  No one answered, so he knocked again.  While waiting to see if anyone was going to answer the knock at the front door, Comacho stepped to the side and observed an individual, later identified as Sergio Gonzalez, either standing in the door of the side entrance to the residence or preparing to exit the side door.  Comacho approached Gonzalez and advised him that the police were there because there had been a 911 hang-up call emanating from the residence.  Carroll, having observed Comacho step to the side of the residence, joined Comacho at the side door.  Comacho testified that, after advising Gonzalez that the

---

[2] During trial Officers Carroll and Comacho testified that Carroll was in what is known as the Field Training Officer (FTO) stage of his training to be a police officer and that Officer Comacho was his Field Training Officer.

officers needed to go inside the residence to determine that everything was all right, they requested permission from Gonzalez to enter the residence and that Gonzalez gave permission to enter.

Upon entry into the house, Comacho and Carroll encountered a number of adults sitting in the living room. From the testimony at trial, the number of adults in the living room was three or four. The adults in the living room included appellant. The officers requested permission to walk through the residence to make sure everything was okay. The officers were advised they could look through the residence.

Initially, appellant opened the door to the first bedroom, and Comacho shined his flashlight in the bedroom and observed a number of children sleeping. At approximately the same time, Carroll entered a second bedroom and observed marijuana and smoking paraphernalia next to the bed. Comacho walked to the second bedroom and observed similar items. The officers returned to the living area and asked to whom the marijuana belonged. A male, who identified himself as Justin Martinez, claimed ownership of the marijuana and the residence. As the police were placing him under arrest, appellant stepped forward and claimed the marijuana was actually hers. Appellant provided enough details about exactly where the marijuana was located in the bedroom to convince the officers of the truthfulness of her admission. Appellant was subsequently arrested for possession of marijuana.

Prior to trial, appellant's trial counsel filed a motion to suppress the seizure of the marijuana, contending that the police seized the marijuana without a warrant and that they did not have consent from anyone authorized to grant consent to enter the

3

residence. The trial court carried the motion to suppress until such time as the evidence at issue was offered during the trial. When the State offered the marijuana into evidence, appellant's counsel objected on the basis set forth in the motion to suppress, and the trial court conducted a hearing outside the presence of the jury. At the conclusion of the hearing, the trial court denied the motion and, initially, did not make findings of fact and conclusions of law. After the State rested its case in chief, Gonzalez testified.

Gonzalez claimed that he was outside the side door entrance to the residence and that neither officer ever asked permission to enter the residence. In fact, upon cross-examination, Gonzalez testified that he told the officers that they could not come into the residence. Appellant then testified that she was immediately behind Gonzalez when they encountered officers Carroll and Comacho. Appellant also testified that she did not hear the officers ask permission to enter the residence, nor did she hear Gonzalez tell the officers that they could enter the residence. Appellant did admit that she heard Comacho tell Gonzalez that there had been a 911 hang-up call and that the officers needed to make sure everything was all right in the residence. At the conclusion of appellant's testimony, trial counsel reurged the motion to suppress the evidence. The trial court again overruled the motion; however, this time the trial court made specific oral findings of fact and conclusions of law on the record. The record reveals that the trial court made the following findings of fact:

1) Officers Carroll and Camacho responded to a "911 hang-up" call at the location in question;

4

2) At the residence in question, the officers encountered Sergio Gonzalez immediately at the side door of the residence;

3) The officers told Sergio Gonzalez why they were there in reference to the 911 call, and requested consent to enter the residence to check on the welfare of the occupants in that context;

4) Sergio Gonzalez gave consent to the police officers to enter the residence;

5) That the officers searched the interior of the residence for signs of a domestic assault or other threatening circumstances that prompted a 911 call to be interrupted;

6) That the search was conducted in a manner consistent with that search, not with a drug or drug paraphernalia search; and,

7) That items of evidence including the marijuana that is State's exhibit Number Nine and paraphernalia that is State's Exhibit number Three, Five and Seven were found in plain view within the residence.

Those findings of fact supported the following conclusions of law found by the trial court:

1) The search of the residence in question was a warrantless search;

2) Officers had consent from an apparent authorized person to conduct the search;

3) Officers were permitted under the exigent circumstances doctrine to conduct said search;

4) The evidence gathered in the course of that search [were] legally obtained.

The jury found appellant guilty and assessed her punishment at 105 days in the Lubbock County Jail. It is from this verdict appellant appeals contending that the trial court's ruling on the motion to suppress was in error.

5

Standard of Review

To review the denial of a motion to suppress, we apply a bifurcated standard of review. See Hubert v. State, 312 S.W.3d 554, 559 (Tex.Crim.App. 2010). We review the trial court's application of the law to the facts *de novo.* Id. However, we defer to the trial court's determination of credibility and historical fact. Id. As to the specific issue of whether a third party had actual authority to consent to a search or whether it was reasonable for an officer to decide that a third party had apparent authority to consent to a search, those issues should be treated as mixed questions of law and fact to be examined under a *de novo* standard. Id. at 559-60. Where a trial court has made findings of fact, as is the case here, we review the record to determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports the fact findings entered. See State v. Kelly, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). After the determination regarding support for the findings of fact, we review the trial court's application of the law to those facts *de novo.* Id. As reviewing courts, we are required to uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even when the trial court may have given an erroneous reason for its ruling. See Armendariz v. State, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003).

Consent to Search

The record clearly demonstrates, and the parties agree, that this search was conducted without benefit of a search warrant and is, therefore, *per se* unreasonable. See Wiede v. State, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). One of the exceptions to

6

the warrant requirement recognized by the courts is the voluntary consent to search. See Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002). Consent must be established by clear and convincing evidence under Texas constitutional standards. Id.

Analysis

We begin our analysis with the findings of fact entered by the trial court. The trial court specifically found that Gonzalez was initially met by the officers at the side door to the residence and not outside that door. Further, the trial court found that Gonzalez was asked for permission to enter the residence and that Gonzalez gave the officers permission to enter the residence. Our review of the record reveals support for the trial court's findings of fact. See Kelly, 204 S.W.3d at 818. Having determined that the trial court's findings are supported in the record, we move on to a *de novo* consideration of the application of the law to the facts.

The ultimate question facing the Court is whether the officers were reasonable in accepting the apparent authority of Gonzalez to consent to the entry into the residence. See Hubert, 312 S.W.3d at 559-60. We make this determination by examining the totality of the circumstances faced by the officers at the time they decided to ask Gonzalez for consent to search. See id. at 560. Officers were called to the residence in the early morning hours in regards to a 911 hang-up call. The testimony revealed that 911 hang-up calls are treated very particularly under the policies of the Lubbock Police Department. When the officers approached the front door and knocked, more than once, no one answered the knock. Upon going to the side of the residence, Comacho noticed Gonzalez in the doorway of the side door or just inside the side door. When

7

approached by the officers, Gonzalez was advised why the officers were there. Subsequently, when permission to enter the residence was requested, Gonzalez said the officers could go in. It was only after the officers had found the marijuana and the paraphernalia that anyone, other than Gonzalez, stepped forward to accept ownership of the house.

In analyzing the requirement that the officers acted reasonably in believing that Gonzalez had the authority to permit entry, we are reminded of Justice Scalia's comments in Illinois v. Rodriguez, 497 U.S. 177, 187, 110 S.Ct 2793, 111 L.Ed.2d 148 (1990):

> It is apparent that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government –whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.

Our review of the totality of the circumstances in conjunction with the trial court's findings of fact, which are supported in the record, convince us that the officers were in fact acting reasonably when they accepted Gonzalez's permission to enter the residence. See Hubert, 312 S.W.3d at 559-60. Further, the evidence supporting the officers' decision is clear and convincing evidence. See Maxwell, 73 S.W.3d at 281.

The cases urged by appellant to support her position do not appear to the Court to be factually applicable. Riordan v. State, cited for the proposition that, in ambiguous circumstances, law enforcement cannot be allowed to proceed without further inquiry

8

into the actual authority of the person granting permission to search, is factually very distinguishable from the case before us. See 905 S.W.2d 765, 771 (Tex.App.—Austin 1995, no pet.). In Riordan, the police knew that the person from whom they were getting permission to search was an elderly neighbor and was only babysitting a child at the house. Id. at 765. Further, the police originally entered the house because, when they knocked on the door, they watched as the elderly lady fell while trying to answer the door. Id. The officers then entered the house in an attempt to help the elderly neighbor, yet they still later asked her to sign a consent-to-search form. Id. Under those facts, the police did have an obligation to investigate further on the issue of apparent authority to consent to search. Such was not the situation faced by the officers in this case. Appellant also relies on Corea v. State, 52 S.W.3d 311, 317 (Tex.App.—Houston [1st Dist.] 2001, pet. ref'd), for the proposition that ambiguous facts require further investigation about the authority of one to consent to a search. In Corea, the officers were relying on the consent of a co-tenant to search. However, when it came to Corea's bedroom, the co-tenant advised that no one other than Corea lived in that bedroom. Id. at 316. Under those facts the 1st District Court of Appeals stated that the police were required to make further inquiry about the authority of the co-tenant to grant permission to search. Id. at 317.

In both the cases relied upon by appellant, the officers conducting the search had specific facts at hand that required further investigation. We are not faced with that same fact pattern in the present case. The officers were acting reasonably in believing that Gonzalez had authority to allow them to enter into the premises for the limited

9

purpose of the search incident to investigating a 911 hang-up call.  See Hubert, 312 S.W.3d at 559-60.  Accordingly, appellant's single issue is overruled.

Conclusion

Having overruled appellant's single issue, we affirm the judgment of the trial court.

Mackey K. Hancock<br>Justice

Do not publish.