**Opinion issued May 29, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00724-CR**

———————————

**TAI LAMICHAEL COMBS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1792626**

---

**MEMORANDUM OPINION**

A jury found the appellant, Tai Lamichael Combs, guilty of aggravated assault of a family member and sentenced him to eleven years of confinement. In his sole issue on appeal, Combs argues the trial court erred in denying his motion to suppress evidence of a firearm found by police officers. He contends that the

record did not show the complainant had apparent authority to consent to a search of the apartment where the firearm was located; thus, he contends the search was unconstitutional. We disagree.

Because the evidence supports the officers' reasonable belief that the complainant had apparent authority to consent to a search of the apartment, the search was lawful, and the trial court did not err in denying the motion to suppress. We thus affirm.

## BACKGROUND

### The Assault

This case arises from a domestic disturbance police call involving Combs and the complainant, "S.J.," a person with whom Combs had a dating relationship. On October 26, 2022, Combs and S.J. entered into an argument at S.J.'s apartment, after which Combs repeatedly punched and kicked S.J., choked her, and struck her in the head with his gun. Combs then pointed his gun at her and threatened to kill her. S.J.'s sister was aware of the situation and called the police. Combs was arrested and subsequently charged with aggravated assault of a family member.

### Motion to Suppress Hearing

Combs filed a motion to suppress. He argued that the police violated his Fourth Amendment rights by conducting a search without a warrant or valid consent.

2

At the hearing on the motion to suppress, the responding police officer, K. Englishbey, testified to the events that unfolded on the night of the assault. Englishbey explained that he and another officer were dispatched for a "disturbance with a weapon involved" call. Englishbey testified that upon arrival at the apartment, S.J. answered the door, and the officers had her step out. Englishbey then saw Combs inside the apartment, approached him, and detained him in a patrol vehicle for safety.

According to Englishbey, S.J. informed him that "it was her apartment" and "she's been there for a few months now." S.J. also reported that Combs had "been there about two weeks."[1]

Englishbey explained that, because the call involved a disturbance with a weapon, the officers searched for a weapon around the scene and searched the initial area where Combs "could be sitting or standing."

When asked who gave consent to search that area, Englishbey testified: "[S.J.] did." He further explained: "I just asked her is this your property? She said, 'yes.' And then I was like, 'Can we search it?' And she said, 'yes.'"

---

[1]    Englishbey acknowledged that, at the time, he had no information on whether Combs was on the lease, paid rent there, had keys to the apartment, where he slept, or if the bed was his or hers.

3

While searching the bed area where Combs was sitting, Englishbey found a bag of ammunition on the bed, and another officer found a firearm underneath the same mattress and bed frame.

During the hearing, the State played a copy of Englishbey's body camera video from that night.[2] The video confirms the events as described by Englishbey. It shows him arriving at the apartment. It then shows S.J. opening the front door, which revealed Combs sitting on a bed near a kitchen a few feet from the front door. S.J. left the doorway and came outside, and Englishbey approached Combs where he sat on the bed and handcuffed him. The video shows the bed located in the open living room area of the apartment next to the front door and kitchen, without any door or enclosure preventing access to the bed.

As the video shows, Englishbey left with Combs, then returned to the apartment where S.J. then sat on the same bed. The video shows that once S.J. left the bed, Englishbey searched the items atop it and found a bag with ammunition; another officer later found a firearm under the mattress.

The defense did not present any evidence. Englishbey's testimony and body camera video were the only evidence offered at the suppression hearing.

The trial court denied Combs's motion to suppress without making any findings of fact or conclusions of law. A jury subsequently found Combs guilty of

---

[2] As the parties acknowledged, the video lacks any sound, except for a brief segment.

aggravated assault of a family member and sentenced him to eleven years' imprisonment. Combs appealed.

## DISCUSSION

On appeal, Combs argues the trial court erred in denying his motion to suppress because there was insufficient evidence to support the officers' belief that S.J. had apparent authority to consent to a search of the apartment. We disagree and affirm.

### A. Standard of review

We review a trial court's decision to deny a motion to suppress under a bifurcated standard of review: we afford almost total deference to the trial court's determination of historical facts that depend on credibility; we review de novo the court's application of law to those facts. *See Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Where, as here, the trial court did not enter findings of fact, we "view the evidence in a light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling." *Hubert*, 312 S.W.3d at 560. We will sustain the trial court's ruling if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

**B.** **Consent to search may be given by an individual with apparent authority over the premises.**

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" by government officials. U.S. CONST. AMEND. IV; *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011).[3] The entry into a residence by police officers is a "search" under the Fourth Amendment that requires a warrant unless the entry falls within one of a well-defined group of exceptions to the warrant requirement. *Limon*, 340 S.W.3d at 756. One such exception arises with voluntary consent to search. *Id.*

The question becomes: who can consent? Of course, one with actual authority to consent to the search may do so. As the Court of Criminal Appeals has explained, a "third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched." *Hubert*, 312 S.W.3d at 560. In a shared living situation, the third party may, in his own right, give valid consent when he and the absent, non-consenting person share "common authority" over the property as shown by mutual use of the

---

[3]    Combs's argument focuses on the Fourth Amendment to the United States Constitution. Because he does not separately brief an argument under the Texas Constitution, we focus our analysis on the United States Constitution's Fourth Amendment. *See* TEX. R. APP. P. 38.1(i); *Young v. State*, 563 S.W.3d 325, 329 n.3 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

6

property with joint access or control. *See Hubert*, 312 S.W.3d at 560–61 (citing *United States v. Matlock*, 415 U.S. 164, 170, 171 n.7 (1974)).

Additionally, consent to search "may be validly obtained from an individual with apparent authority over the premises." *Limon*, 340 S.W.3d at 756. If an officer reasonably believes that a third party purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists, rendering the search reasonable. *Hubert*, 312 S.W.3d at 561 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990)).

The test for apparent authority is objective: "would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Limon*, 340 S.W.3d at 756 (quoting *Rodriguez*, 497 U.S. at 188). Whether an officer's belief was reasonable "hinges on widely shared social expectations and commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest." *Limon*, 340 S.W.3d at 756–57 (internal quotation marks and citations omitted).

"The State must prove actual or apparent authority by a preponderance of the evidence." *Id.* at 757. Whether a third party had actual authority to consent to a search of another's property and whether an officer was reasonable in finding that

a third party had apparent authority to consent are mixed questions of law and fact. *Hubert*, 312 S.W.3d at 559–60.

**C. The trial court did not err in denying Combs's motion to suppress; the record shows that an individual with apparent authority over the premises consented to the search.**

Because the State met its burden to show that an individual with apparent authority consented to the search, the trial court did not err in denying Combs's motion to suppress. In assessing apparent authority, the question is whether Officer Englishbey's belief in S.J.'s authority to consent was reasonable under the facts known to Englishbey at the time of the search. *See Limon*, 340 S.W.3d at 757. It was.

This record supports the reasonableness of Englishbey's belief that S.J. had authority to consent to a search of the apartment, including the bed:

- When Englishbey arrived at the apartment, S.J. was inside the apartment and opened the front door by herself, at night.

- S.J. told Englishbey that the apartment was hers and that she had resided there for months.

- While S.J. spoke to the police before they initiated their search, S.J. sat on the same (and only) bed where Combs had been observed sitting, suggesting joint access and control over the bed. *See Hubert*, 312 S.W.3d at 560–61 (providing that common authority is shown by mutual use of the property with joint access or control).

- This bed was located in the open living room area of the apartment, next to the front door and kitchen, without any door or enclosure preventing access to the bed.

8

- Englishbey asked whether the property was owned by S.J., and she said it was.

- Englishbey asked S.J. if they could search it, and she said yes.

The Court of Criminal Appeals and our Court have found apparent authority to consent under similar (even lesser) circumstances. For instance, in *Limon*, 340 S.W.3d at 757–59, the Court of Criminal Appeals held that a teenager who opened the front door by himself in response to an officer's knock late at night had apparent authority to consent to the officer's warrantless entry. So too with *Brown v. State*, in which this Court held that the defendant's wife had apparent authority to consent to a search of a motel room because the wife answered the door, stated she was staying in the room, and consented to the search. 212 S.W.3d 851, 868 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Other courts are in accord. *See, e.g.*, *Davis v. State*, 93 S.W.3d 664, 668 (Tex. App.—Texarkana 2002, pet. ref'd) (officers were reasonable in belief that female who said she lived in the one-bedroom residence had apparent authority to consent to search).

**D. Combs's arguments do not change this conclusion.**

Combs offers two arguments in response, neither of which changes this conclusion. First, he argues the evidence does not show that S.J. gave "explicit or implicit consent" to enter and search the bedroom area. But Officer Englishbey testified at the suppression hearing that S.J. consented to the search. As precedent instructs, where, as here, the trial court did not enter findings of fact, we "view the

9

evidence in a light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling." *Hubert*, 312 S.W.3d at 560.

Second, Combs argues that S.J.'s authority to consent became ambiguous when the officers "became aware that [Combs] resided in the bedroom." On this basis, he argues that the officers were obligated to further investigate S.J.'s authority to consent. *See Whisenhunt v. State*, 122 S.W.3d 295, 299 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (officers relying on third-party consent are not allowed to proceed with a warrantless search without inquiry when consent is given in ambiguous circumstances). In support of his argument, Combs relies primarily on this Court's decision in *Corea v. State*, 52 S.W.3d 311 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). But *Corea* is inapposite, and this case presents no ambiguity.

The issue in *Corea* was whether the State met its burden of proving that the defendant's brother-in-law had authority to consent to a search of the defendant's bedroom in an apartment leased by the defendant but also occupied by his brother-in-law. During a burglary investigation, officers received information that the defendant possessed stolen property. *Id.* at 314. The officers went to the apartment, and the brother-in-law gave the officers consent to search the apartment and

showed the officers the defendant's bedroom. *Id.* The trial court held that the brother-in-law had apparent authority to consent to the search. *Id.* at 315.

This Court reversed. *Id.* at 317. We explained that the brother-in-law's authority to consent to the search of the defendant's bedroom "became ambiguous once he told the officers no one other than [the defendant] lived in [the defendant's] bedroom." *Id.*; *see id.* at 316 (noting defendant could exclude brother-in-law from room, and there was no evidence that defendant consented to brother-in-law entering or that he had ever entered). At that point, the officers were "obligated to investigate further to determine if [the brother-in-law] truly had the authority to consent to a search of th[at] bedroom or to obtain a search warrant." *Id.* at 317.

Unlike in *Corea*, here, there was no ambiguity with respect to S.J.'s apparent authority to consent to the search. S.J. opened the door to the police at night, sat down on the bed at issue, told the police it was her apartment and property, and consented to the search. No evidence suggests that Combs had his own bedroom or a space where only he lived or to which only he had access. Instead, as the record shows, the bed at issue sat in the open living room, next to both the front door and the kitchen, without a door limiting access. No evidence suggests Combs had exclusive control over the bed, that only he used the bed, or that S.J. was prohibited from accessing or using it.

11

Because the evidence supports Officer Englishbey's belief that S.J. had authority to consent to a search of the apartment, the search was reasonable, and the trial court did not err in denying Combs's motion to suppress. We overrule Combs's sole issue.

## CONCLUSION

We affirm the judgment of the trial court.


Jennifer Caughey
Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).