

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00281-CR

_____

LEE MARVIN RAINS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 90th District Court
Young County, Texas
Trial Court No. CR12448

Before Sudderth, CJ; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

After the trial court denied his motion to suppress evidence seized in a search of his person, Appellant Lee Marvin Rains pleaded guilty to the state-jail felony offense of possession of less than one gram of a controlled substance, enhanced by two previous felony convictions. *See* Tex. Health & Safety Code § 481.115; Tex. Penal Code § 12.425. The trial court sentenced him to 20 years' confinement and a $5,000 fine, and he appealed. In a single issue, Rains complains that the trial court erred by denying his motion to suppress. We will affirm.

## I. BACKGROUND

In April 2024, Rains was driving with two passengers in his vehicle. Graham Police Officer David Lipsey stopped Rains for speeding, and Sergeant Christopher Post arrived as backup soon thereafter. Officer Lipsey asked Rains's two passengers to exit the vehicle; Sergeant Post asked Rains to exit. When Sergeant Post asked Rains if he had any weapons, Rains raised his hands and said he did not. Sergeant Post then asked Rains, "Do you mind if I search you?" Rains responded, "Yeah,"[1] positioned himself

---

[1]Although the testimony from Rains and Sergeant Post was conflicting, these quotations and this timeline of events are taken from the trial court's findings of fact and from Sergeant Post's bodycam video. At the first hearing on Rains's motion to suppress, Rains testified that no one had asked permission to search him when he exited his vehicle. Sergeant Post agreed with the State's characterization that he asked Rains, "Can I pat you down or can I search you?" At a later hearing, Sergeant Post testified that "as soon as [Rains] [got] out I [did] request for consent and ask[ed him] if he mind[ed] if I search[ed] him. . . . He immediately assumed a position to be searched and said, Yeah."

facing away from Sergeant Post, and raised his hands in the air. Sergeant Post responded, "Thank you," reached into Rains's front pocket, and immediately removed a small bag containing a white, crystalline substance. When Sergeant Post ordered Rains to put his hands behind his back, Rains brought his hand down to tuck in his pocket, and Sergeant Post handcuffed him.[2] Rains was charged by indictment with possession of a controlled substance—methamphetamine—enhanced by two previous felonies.

Before trial, Rains filed a motion to suppress the evidence Sergeant Post discovered in the search. The trial court heard the motion and testimony from Rains and Sergeant Post, viewed Sergeant Post's bodycam video, and then denied the motion to suppress.

Rains moved for reconsideration of the motion to suppress, and the trial court held a second hearing and heard additional testimony from Sergeant Post. The trial court denied the motion to reconsider. Rains pleaded guilty to the offense and true to the two enhancements, the trial court sentenced him, and he then filed this appeal.

---

[2]Rains states that he tried to cover his pockets with his hands after Sergeant Post removed the baggie from his pocket, effectively withdrawing consent. However, this is unsupported by the video or by the trial court's findings of fact. In the video, as Sergeant Post put his hands into Rains's pocket, Rains held his hands at or above his shoulders. Sergeant Post reached into Rains's front, right pocket and pulled out a blue baggie. Sergeant Post then instructed Rains to put his hands behind his back, and Rains instead appeared to tuck something into his pocket. Sergeant Post then moved Rains's hands behind his back and held them while he retrieved handcuffs and put them on Rains.

## II. STANDARD OF REVIEW

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to the trial court's rulings on questions of historical fact and on application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Martinez*, 570 S.W.3d at 281.

Under the Fourth Amendment, a search conducted without a warrant is per se unreasonable subject to only a few specifically established exceptions. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). One of those exceptions is a search conducted with the person's consent. *Id.* Under Texas law, the State must prove voluntary consent by clear and convincing evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). The consent must be positive and unequivocal, and there must not be any duress or coercion, actual or implied. *Id.* Consent is not established by showing mere acquiescence to lawful authority. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances. *Weaver*, 349 S.W.3d at 526. "Consent to search is not to be lightly inferred." *Meeks v. State*, 692 S.W.2d 504,

4

509 (Tex. Crim. App. 1985); *Corea v. State*, 52 S.W.3d 311, 316 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

We review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

## III.   DISCUSSION

In his sole issue on appeal, Rains argues that he never consented to Sergeant Post's search, or, alternatively, that any consent he gave was invalid because it was given in the face of coercion.

Rains argues that he denied Sergeant Posts' verbal request for permission to search him by saying that, "yeah," he did mind being searched and did not consent. However, the Court of Criminal Appeals has held that an affirmative answer to the question, "do you mind if I search," does not necessarily convey a refusal of permission. *See Meekins*, 340 S.W.3d at 461 (holding that a similar exchange between officer and suspect supported an implied finding of consent to search, based on the circumstances). A person may give consent to be searched through words, actions, or circumstantial evidence showing implied consent. *Id.* at 458.  To determine whether consent was given, we must consider the totality of the circumstances. *Id.* at 460.

We also must defer to the trial court's findings of fact for our analysis. *See Johnson*, 414 S.W.3d at 192. The trial court's findings of facts, issued after denying Rains's motion to suppress, state the following:

- Officer Lipsey initially stopped Rains's vehicle, and Sergeant Post arrived later and served as backup;

- Sergeant Post asked Rains to exit the vehicle, and Rains complied;

- Sergeant Post noticed "bulges" in Rains's pants pockets;

- Sergeant Post asked Rains if he had any weapons on him and Rains said he did not;

- During his testimony in the first hearing, Rains denied that he was asked for permission to search his person;

- Sergeant Post asked Rains, "do you mind if I search you," and Rains responded "yeah," raised his arms, and turned his back to Sergeant Post "in a manner that would imply consent to a reasonable person";

- Rains's position was indicative of a person who has had previous law-enforcement interactions and this position is commonly assumed before a search;

- Rains said nothing and took no action to indicate that he had not given permission for the search, that he objected to it, or that he had withdrawn consent; and

- The trial court found Sergeant Post's testimony credible and Rains's testimony not credible.

Although Rains's answer of "yeah" to Sergeant Post's question may have been ambiguous, the trial court found that Rains gave implied consent to be searched by his body movements and by taking no action to resist the search or to revoke that consent. *See Meekins*, 340 S.W.3d at 458. Further, although the bodycam video may contradict

6

portions of both Rains's and Sergeant Post's testimony, it does not contradict the trial court's findings. *See Carmouche*, 10 S.W.3d at 332; *Enriquez v. State*, 678 S.W.3d 273, 285 (Tex. App.—San Antonio 2023, pet. ref'd). Accordingly, we must afford the trial court's findings of fact almost total deference. *See Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).

Rains argues that Sergeant Post's bodycam video contradicts essential portions of the findings, the character of Sergeant Post's communications about the search, and the sequence of events.

First, Rains argues that the video shows that he turned away from Sergeant Post and began raising his arms after Sergeant Post asked if he had any weapons, not after Sergeant Post asked if he minded being searched. While it is true that, in the bodycam video, Rains assumes a compliant posture after Sergeant Post asks him if he has any weapons and while asking for consent to being searched, this does not differ fundamentally from the trial court's findings of fact. The trial court found that Rains's verbal answers, viewed in the context of his movements, indicated consent to be searched and that nothing he did indicated that he withdrew that consent. Although the video does contradict portions of both Rains's and Sergeant Post's testimony, it does not fundamentally contradict the trial court's findings. *See Carmouche*, 10 S.W.3d at 332–33 (holding that in "unique circumstances" where video evidence flatly contradicted trial court's findings, appellate court could not afford them "almost total deference" otherwise required).

7

Second, Rains argues that because Sergeant Post ordered him into a posture of compliance before requesting to search him, the search was involuntary. *See Carmouche*, 10 S.W.3d at 332. He contends that his raising his arms was "the product of police direction and the inherent coercion of a traffic stop." Voluntariness is a question of fact to be determined from all the circumstances. *Id.* at 331. Consent cannot be established by showing no more than acquiescence to a claim of lawful authority. *Id.*

Rains analogizes his response to Sergeant Post's questions to the facts in *Massey v. State*, 649 S.W.3d 500, 514 (Tex. App.—Fort Worth 2022, op. on reh'g), *rev'd by* 667 S.W.3d 784 (Tex. Crim. App. 2023). In *Massey*, the arresting officer said, "Just go ahead and turn around, I'm going to pat you down for my safety." *Id.* at 515. Massey complied and raised his arms slightly, and the officer began to search him. *Id.* In that case, we held that "where the officer . . . couches the issue as a command or directive to comply with a search, verbal or nonverbal responses that do not clearly indicate consent—as opposed to mere acquiescence—are seldom deemed manifestations of consent." *Id.* at 515.

Conversely, Sergeant Post asked Rains whether he had "any knives, any handguns, anything like that," and whether Rains minded if Sergeant Post searched him. These questions are not direct orders as in *Massey,* and the trial court's findings of fact do not support Rains's contention that they are. *See Massey*, 649 S.W.3d at 515; *see also Carmouche*, 10 S.W.3d at 332 (holding that consent to search was not free and voluntary when officer ordered suspect to "[t]urn around and put [his] hands on the car"); *Adams*

8

*v. State*, No. 13-17-00420-CR, 2020 WL 2610798, at *7–8 (Tex. App.—Corpus Christi–Edinburg May 21, 2020, pet. ref'd) (mem. op., not designated for publication) (holding consent was freely given when defendant evinced consent through conduct, although verbal exchange was unclear).

The trial court's findings of fact are supported by the bodycam video and the witnesses' testimony, so we defer to those findings. *See Carmouche*, 10 S.W.3d at 332 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Because the record supports the trial court's findings that the search was consensual and that the consent was not withdrawn, we overrule Rains's sole issue.

## IV. CONCLUSION

Having overruled Rains's sole issue, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 25, 2026

9