COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
 RUFUS MONROE WALKER
 A/K/A TIMOTHY ROUTSON,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00044-CR
  
                          Appeal from
  
 Criminal District
 Court No. 2
  
 of Tarrant County,
 Texas
  
 (TC # 1195820D)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

Rufus
Monroe Walker appeals his conviction for the offense of possession of a
controlled substance, namely heroin of one gram or more but less than four
grams. A jury assessed Appellant’s punishment at a term of forty-five years’
confinement. 

FACTUAL SUMMARY

On
March 23, 2010, two men told police that Appellant had stolen their nail guns.  Acting on this information, police approached
Appellant who was walking to the front yard of his residence located at 910
Loney Street in Fort Worth.  After seeing
what they believed to be narcotics in plain view in Appellant’s pants pocket,
police placed Appellant under arrest.  They
also asked permission to search the house for the nail guns.  Initially, Appellant refused to consent but after
police explained that they would request a search warrant, Appellant wavered.
There is conflicting evidence as to whether Appellant affirmatively refused to
consent to the search.  The officers
called Detective Leary to the scene to prepare a search warrant and supporting
affidavit.  Shortly after Detective Leary
arrived, Appellant’s wife Mia Schwalm arrived on the scene. 

Schwalm
informed the police that she was Appellant’s wife and produced a driver’s
license indicating her residence as 910 Loney.  Schwalm told police that she lived at the
residence but temporarily stayed with her mother.  One of the officers recognized Schwalm from a
previous call to the same residence.  Detective Leary asked Schwalm for consent to
search the house.  Detective Leary claimed
that he told Schwalm that police would damage the security door, and, if police
found any narcotics in the house, they could charge her with possession.  Schwalm signed a written consent.  Schwalm also retrieved the key to the house
from Appellant.  Police entered the house
and found three nail guns in a common area. 

CONSENT TO SEARCH

In
Issue One, Appellant argues that police obtained Schwalm’s consent through
coercion and that she did not consent voluntarily.  In Issue Two, he argues that, even if the
trial court found that Schwalm had apparent authority to consent to the search
of Appellant’s home, the rule of Georgia
v. Randolph precluded her from effectively consenting to the search.  We address Appellant’s points in the
following order:  (1) whether Schwalm had
apparent authority to consent; (2) whether Randolph
negated Schwalm’s authority to consent; and (3) whether Schwalm’s consent
was voluntary.

Standard
of Review

            “We apply a bifurcated standard of
review to motions to suppress, giving almost total deference to a trial court’s
determination of historical facts, while reviewing de novo the court’s
application of the law.”  Brown v. State, 212 S.W.3d 851, 866
(Tex.App.--Houston [1st Dist.] 2006, pet. ref’d).  “At the hearing on the motion, the trial court
is the sole judge of the credibility of the witnesses and the weight to be
given their testimony.”  See Villarreal v. State, 935 S.W.2d 134,
138 (Tex.Crim.App. 1996).  “[T]he trial
court may believe or disbelieve all or any part of a witness’s testimony, even
if that testimony is not controverted.”  Brown, 212 S.W.3d at 867. “We will
sustain the lower court’s ruling if it is reasonably supported by the record
and is correct on any theory of law applicable to the case.”  State v.
Dixon, 206 S.W.3d 587, 590 (Tex.Crim.App. 2005). 

Apparent
Authority

A
warrantless search by law enforcement officers does not violate the Fourth
Amendment’s guarantee against unreasonable searches and seizures if the
officers have obtained the consent of a third party who possesses common
authority over the premises.  Whisenhunt v. State, 122 S.W.3d 295, 298
(Tex.App.--Houston [1st Dist.] 2003, pet. ref’d).  When the facts do not support a finding of
actual authority, a search may be reasonable if there is apparent authority,
even if that belief is mistaken.  Id. at 299, citing Illinois v. Rodriguez,
497 U.S. 177, 188 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).  “Apparent authority is judged under an
objective standard:  ‘would the facts
available to the officer at the moment warrant a man of reasonable caution in
the belief that the consenting party had authority over the premises?’” Limon v. State, 340 S.W.3d 753, 756
(Tex.Crim.App. 2011), quoting Rodriguez,
497 U.S. at 188, 110 S.Ct. 2793.

The
State bears the burden of proving that the person who gave consent had the
actual or apparent authority to do so.  Corea v. State, 52 S.W.3d 311, 317
(Tex.App.--Houston [1st Dist.] 2001, pet. ref’d).  “The burden cannot be met if officers, faced
with an ambiguous situation, nevertheless proceed without making further
inquiry.”  Id.  “If the officers do not
learn enough and if the circumstances make it unclear whether the property is
subject to ‘common authority’ by the person giving consent, ‘then warrantless
entry is unlawful without further inquiry.’”  Id.,
citing Rodriguez, 497 U.S. at 188-89, 110 S.Ct. at 2801 (holding “police
officers conducted a reasonable investigation to determine that [consent-giver]
had apparent actual authority by virtue of the fact he was listed as an
occupant of the apartment”).

Here,
the State presented the following evidence at the suppression hearing.  Schwalm stated that she lived at Appellant’s
residence.  She produced a driver’s
license indicating she lived at 910 Loney.  One of the officers had spoken to Schwalm on a
previous occasion when she lived at the residence.  The officers learned that Schwalm was
Appellant’s wife.  Finally, the officers
conducted a search of Schwalm’s information that indicated her address was 910
Loney. 

We
conclude the State met its burden to show that the officers reasonably believed
Schwalm had apparent authority to consent to the search of Appellant’s home.  See
Corea, 52 S.W.3d at 317.  We hold,
accordingly, that the facts available to the officers at the time warranted the
belief that the Schwalm had authority over the premises.  See Rodriguez,
497 U.S. at 188, 110 S.Ct. 2793.

Applicability
of Georgia v. Randolph

Next,
Appellant complains that the United States Supreme Court’s ruling in Georgia v. Randolph prevented Schwalm
from consenting to the search over Appellant’s express refusal of consent.  Georgia
v. Randolph, 547 U.S. 103, 122-23, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). There,
the Supreme Court held that “a physically present inhabitant’s express refusal
of consent to a police search is dispositive as to him, regardless of the
consent of a fellow occupant.”  Id. Appellant asserts--for the first
time on appeal--that, “Randolph
precludes [Schwalm] from being able to consent to the search.” 

Here,
the issue turned on the credibility and demeanor of the witnesses. The parties
dispute whether Appellant expressly refused to consent to the search. Officer Russell
testified that Appellant never definitively refused.  Detective Leary explained that Appellant
initially refused to consent to the search, but eventually began to rethink his
decision.  As opposed to expressly
withholding consent, Appellant facilitated the search by giving Schwalm the key
to the house.  Because the trial court
based its findings on “an evaluation of credibility and demeanor of the
witnesses, we defer to those findings as they are supported by the record.”  Woolverton
v. State, 324 S.W.3d 794, 800 (Tex.App.--Texarkana 2010, pet.
ref’d)(holding trial court’s findings governed where evidence conflicted as to
whether [appellant] expressly refused consent to search). We overrule Issue
Two. 

Voluntary
Consent To Search

            “The Fourth Amendment test for a
valid consent to search is that the consent be voluntary.”  Carmouche
v. State, 10 S.W.3d 323, 331 (Tex.Crim.App. 2000).  To be valid, the consent must “not be coerced,
by explicit or implicit means, by implied threat or covert force.” Id., citing
Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36
L.Ed.2d 854 (1973).  “[W]hether consent
was voluntary is a factual question and must be analyzed based on the totality
of the circumstances.”  Meekins v. State, 340 S.W.3d 454, 460 (Tex.Crim.App.
2011).  The nonexclusive list of factors
courts examine when determining voluntariness of consent include:

(1) whether, and to
what extent, officers exhibited a show of force, including a display of
weapons; (2) whether the actions of the arresting officers can be classified as
flagrant misconduct; (3) whether the police threatened to obtain a search
warrant if the detainee did not acquiesce, or whether the police claimed a
right to search; (4) whether police first gave appellant his Miranda warnings; (5) whether the arrest
was made in order to obtain consent; (6) whether appellant knew that he could
refuse to allow a search; (7) whether the consent was first offered by
appellant or was in response to police request; (8) appellant’s education,
intelligence, and physical condition; and (9) the proximity of the consent to
the arrest, since an intervening time period can provide a degree of
attenuation of the taint.

 

Frierson v. State, 839 S.W.2d 841, 851
(Tex.App.--Dallas 1992, pet. ref’d). The question we address is: “Could a
rational trier of fact conclude, by clear and convincing evidence . . . based
upon all of the facts and logical inferences that can be drawn from those
facts, and in the light most favorable to the prosecution, that [Schwalm]
voluntarily consented to the search?”  Meekins, 340 S.W.3d at 460 n.24.  “If a rational trier of fact could so conclude
(even though other rational triers of fact might disagree) then the trial
judge’s factfinding must stand.”  Id. 

            Here, Appellant relies exclusively
on his argument that Detective Leary threatened to charge Schwalm with a crime and
damage the security door if she did not consent to the search. The strongest
evidence supporting a finding that Schwalm voluntarily consented is the written
consent to search form she signed.  The
State presented evidence that Schwalm indicated that she wanted officers to search
the house.  Detective Leary admitted to
making a statement regarding the fact that if he obtained a warrant they would
have to bust the door in and, if they found “some illegal stuff, Schwalm could
be charged.” 

            Examining the arguments and evidence
presented at the suppression hearing, we hold that the trial judge made a
reasonable ruling based on the totality of the circumstances.  See Meekins,
340 S.W.3d at 465.  Viewing the totality
of the circumstances in the light most favorable to the trial judge’s ruling,
we conclude that the trial judge did not abuse his discretion by finding that
Schwalm voluntarily consented to the search of Appellant’s home.  We overrule Issue One. 




 

IMPROPER JURY ARGUMENT

 

In
Issue Three, Appellant argues that the prosecutor engaged in an improper
closing argument during the guilt phase of the trial.  He complains of the following excerpt: 

Gilfour is a 15-year
veteran on the Fort Worth police department force. Don’t you think if he had
done something wrong, if he had a habit of lying or making stuff up, that
[Appellant] would have a stack of internal affairs documents here?

 

Appellant objected
and stated, “Your Honor, I object. That’s an inappropriate argument.”  The prosecutor continued:  “Who is under credibility here?  If we couldn’t trust Gilfour, you know she
would have brought that up.  You know if
he was a dirty cop, we would know.”  Appellant
objected again and argued that this was an “inappropriate closing arguments.”  The court responded, “It’s just final
arguments, [counsel].  It’s
overruled.”  

We
hold that these objections were too general to preserve error for purposes of this
appeal.  Additionally, the record does
not indicate that the trial court or opposing counsel understood the nature of
the objections.  See Miles v. State, 312 S.W.3d 909, 911 (Tex.App.--Houston [1st.
Dist.] 2010, pet. ref’d)(holding “objection that the prosecutor was making an ‘improper
argument’ is insufficient to preserve error . . . because it is a general
objection and the trial court made no statements that would indicate it
understood the nature of the objection”). 
Even if Appellant’s objections were sufficient, his argument fails
because the prosecutor’s statement was a proper answer to arguments of opposing
counsel. 

“Permissible
jury argument generally falls into one of four areas:  (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) an answer to the argument of opposing counsel;
or (4) a plea for law enforcement.”  Berry v. State, 233 S.W.3d 847, 859
(Tex.Crim.App. 2007).  To determine whether jury argument is
improper, we look to the entire record and assess the argument in context.”  See
Gaddis v. State, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988); Cole v. State, 194 S.W.3d 538, 544
(Tex.App.--Houston [1st Dist.] 2006, pet. ref’d); Van Zandt v. State, 932 S.W.2d 88, 93 (Tex.App.--El Paso 1996, pet.
ref’d).  “If a jury argument exceeds the
bounds of proper argument, it is not reversible error, unless, in light of the
record as a whole, the argument is extreme, manifestly improper, violative of a
mandatory statute, or injects into the trial new facts harmful to the accused.”  Harris v. State, 996 S.W.2d 232, 237
(Tex.App.--Houston [14th Dist.] 1999, no pet.).  “However, if the State’s argument falls within
one of the four permissible categories previously enumerated, it does not
constitute error.”  Lange v. State, 57 S.W.3d 458, 468 (Tex.App.--Amarillo 2001, pet.
ref’d). 

The
prosecutor’s statements, taken in context, were a proper answer to the Appellant’s
arguments.  After Appellant objected, the
prosecutor continued:

It’s credibility,
folks. You’re totally allowed to determine that.  That’s completely within your province as
jurors.  You can completely consider
that.  It’s completely appropriate.  We don’t have one shred of evidence that he’s
not telling you exactly what he saw and, furthermore, why would someone with a
15-year employment throw it away and flush it down the toilet for a case that
only involves 1.59 grams of heroin?  It’s
not worth it.  It doesn’t make any sense.
 I suggest you can completely believe
what he says.

 

This argument
was a response to Appellant’s multiple assertions that Officer Gilfour was
lying: “Hello, Officer Gilfour’s got x-ray vision . . . .  It is impossible for Officer Gilfour to have
seen what he saw . . . .  Folks, Officer
Gilfour did not see this bag of alleged controlled substances in plain view in
Mr. Walker’s possession. It’s a physical impossibility.”

            The State’s closing argument constituted
a response to Appellant’s attack upon Officer Gilfour’s credibility.  See,
e.g., Bryant v. State, 923 S.W.2d
199, 212 (Tex.App.--Waco 1996, pet. ref’d)(noting that when the defense attacks
the veracity of a witness, the prosecution may comment on the witness’s
credibility and the risk of committing perjury); McDuffie v. State, 854 S.W.2d 195, 217 (Tex.App.--Beaumont 1993,
pet. ref’d)(finding that where a defendant argues about flaws and
inconsistencies in the evidence or when he attacks the integrity of the State’s
witnesses, the State is permitted to “stick up” for its witnesses and
rehabilitate their credibility in the eyes of the jury); Stewart v. State, No. 05-02-01005-CR, 2003 WL 1735150, at *5
(Tex.App.--Dallas 2003, pet. ref’d)(holding prosecutor’s questions why appellant
had not called anyone to testify that the state’s witness was untruthful was a
specific response to defense counsel’s argument as to witness’s credibility).  We overrule Issue Three.

IMPROPER QUESTION DURING PUNISHMENT PHASE

In
Issue Four, Appellant complains that the trial court erred when it allowed the
prosecution to ask a question based upon a fact not in evidence that suggested
an unproven, extraneous offense.  The
State asserts that Appellant has waived this complaint.  We agree. 

Appellant
argues that, “[b]y asking the question, the prosecutor implied that not only
was appellant using drugs, but that he was dealing drugs.”  Appellant further complains that this single reference
“suggest[ed] without evidence that the appellant was dealing drugs as a
business,” and “could well have added significant time to the jury’s
punishment.” 

            To preserve error, the objecting
party must continue to object each time the objectionable evidence is offered.  Fuentes
v. State, 991 S.W.2d 267, 273 (Tex.Crim.App. 1999).  Here, the prosecutor made several references
to Appellant dealing drugs but Appellant did not object to any of the
subsequent mentions of this allegedly inadmissible evidence.  Consequently, his complaint has been waived.  See
Fuentes, 991 S.W.2d at 273.  We
overrule Issue Four.  Having overruled
all Appellant’s arguments on appeal, we affirm the trial court’s judgment.

September 5, 2012                              ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)