COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| RUFUS MONROE WALKER | | No. 08-11-00044-CR |
| A/K/A TIMOTHY ROUTSON, | § | |
| | | Appeal from |
| Appellant, | § | |
| | | Criminal District Court No. 2 |
| v. | § | |
| | | of Tarrant County, Texas |
| THE STATE OF TEXAS, | § | |
| | | (TC # 1195820D) |
| Appellee. | § | |

**O P I N I O N**

Rufus Monroe Walker appeals his conviction for the offense of possession of a controlled substance, namely heroin of one gram or more but less than four grams. A jury assessed Appellant's punishment at a term of forty-five years' confinement.

**FACTUAL SUMMARY**

On March 23, 2010, two men told police that Appellant had stolen their nail guns. Acting on this information, police approached Appellant who was walking to the front yard of his residence located at 910 Loney Street in Fort Worth. After seeing what they believed to be narcotics in plain view in Appellant's pants pocket, police placed Appellant under arrest. They also asked permission to search the house for the nail guns. Initially, Appellant refused to consent but after police explained that they would request a search warrant, Appellant wavered. There is conflicting evidence as to whether Appellant affirmatively refused to consent to the search. The officers called Detective Leary to the scene to prepare a search warrant and supporting affidavit. Shortly after Detective Leary arrived, Appellant's wife Mia Schwalm arrived on the scene.

Schwalm informed the police that she was Appellant's wife and produced a driver's license indicating her residence as 910 Loney. Schwalm told police that she lived at the residence but temporarily stayed with her mother. One of the officers recognized Schwalm from a previous call to the same residence. Detective Leary asked Schwalm for consent to search the house. Detective Leary claimed that he told Schwalm that police would damage the security door, and, if police found any narcotics in the house, they could charge her with possession. Schwalm signed a written consent. Schwalm also retrieved the key to the house from Appellant. Police entered the house and found three nail guns in a common area.

## CONSENT TO SEARCH

In Issue One, Appellant argues that police obtained Schwalm's consent through coercion and that she did not consent voluntarily. In Issue Two, he argues that, even if the trial court found that Schwalm had apparent authority to consent to the search of Appellant's home, the rule of *Georgia v. Randolph* precluded her from effectively consenting to the search. We address Appellant's points in the following order: (1) whether Schwalm had apparent authority to consent; (2) whether *Randolph* negated Schwalm's authority to consent; and (3) whether Schwalm's consent was voluntary.

### *Standard of Review*

"We apply a bifurcated standard of review to motions to suppress, giving almost total deference to a trial court's determination of historical facts, while reviewing de novo the court's application of the law." *Brown v. State*, 212 S.W.3d 851, 866 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd). "At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). "[T]he trial court may believe or disbelieve all or any part of a

witness's testimony, even if that testimony is not controverted." *Brown*, 212 S.W.3d at 867. "We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2005).

### *Apparent Authority*

A warrantless search by law enforcement officers does not violate the Fourth Amendment's guarantee against unreasonable searches and seizures if the officers have obtained the consent of a third party who possesses common authority over the premises. *Whisenhunt v. State*, 122 S.W.3d 295, 298 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd). When the facts do not support a finding of actual authority, a search may be reasonable if there is apparent authority, even if that belief is mistaken. *Id.* at 299, *citing Illinois v. Rodriguez*, 497 U.S. 177, 188 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990). "Apparent authority is judged under an objective standard: 'would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *Limon v. State*, 340 S.W.3d 753, 756 (Tex.Crim.App. 2011), *quoting Rodriguez*, 497 U.S. at 188, 110 S.Ct. 2793.

The State bears the burden of proving that the person who gave consent had the actual or apparent authority to do so. *Corea v. State*, 52 S.W.3d 311, 317 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd). "The burden cannot be met if officers, faced with an ambiguous situation, nevertheless proceed without making further inquiry." *Id.* "If the officers do not learn enough and if the circumstances make it unclear whether the property is subject to 'common authority' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.'" *Id.*, *citing Rodriguez*, 497 U.S. at 188-89, 110 S.Ct. at 2801 (holding "police officers conducted a

-3-

reasonable investigation to determine that [consent-giver] had apparent actual authority by virtue of the fact he was listed as an occupant of the apartment").

Here, the State presented the following evidence at the suppression hearing. Schwalm stated that she lived at Appellant's residence. She produced a driver's license indicating she lived at 910 Loney. One of the officers had spoken to Schwalm on a previous occasion when she lived at the residence. The officers learned that Schwalm was Appellant's wife. Finally, the officers conducted a search of Schwalm's information that indicated her address was 910 Loney.

We conclude the State met its burden to show that the officers reasonably believed Schwalm had apparent authority to consent to the search of Appellant's home. *See Corea*, 52 S.W.3d at 317. We hold, accordingly, that the facts available to the officers at the time warranted the belief that the Schwalm had authority over the premises. *See Rodriguez*, 497 U.S. at 188, 110 S.Ct. 2793.

### *Applicability of Georgia v. Randolph*

Next, Appellant complains that the United States Supreme Court's ruling in *Georgia v. Randolph* prevented Schwalm from consenting to the search over Appellant's express refusal of consent. *Georgia v. Randolph*, 547 U.S. 103, 122-23, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). There, the Supreme Court held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Id*. Appellant asserts--for the first time on appeal--that, "*Randolph* precludes [Schwalm] from being able to consent to the search."

Here, the issue turned on the credibility and demeanor of the witnesses. The parties dispute whether Appellant expressly refused to consent to the search. Officer Russell testified that Appellant never definitively refused. Detective Leary explained that Appellant initially

refused to consent to the search, but eventually began to rethink his decision. As opposed to expressly withholding consent, Appellant facilitated the search by giving Schwalm the key to the house. Because the trial court based its findings on "an evaluation of credibility and demeanor of the witnesses, we defer to those findings as they are supported by the record." *Woolverton v. State*, 324 S.W.3d 794, 800 (Tex.App.--Texarkana 2010, pet. ref'd)(holding trial court's findings governed where evidence conflicted as to whether [appellant] expressly refused consent to search). We overrule Issue Two.

### *Voluntary Consent To Search*

"The Fourth Amendment test for a valid consent to search is that the consent be voluntary." *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App. 2000). To be valid, the consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.*, *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973). "[W]hether consent was voluntary is a factual question and must be analyzed based on the totality of the circumstances." *Meekins v. State*, 340 S.W.3d 454, 460 (Tex.Crim.App. 2011). The nonexclusive list of factors courts examine when determining voluntariness of consent include:

> (1) whether, and to what extent, officers exhibited a show of force, including a display of weapons; (2) whether the actions of the arresting officers can be classified as flagrant misconduct; (3) whether the police threatened to obtain a search warrant if the detainee did not acquiesce, or whether the police claimed a right to search; (4) whether police first gave appellant his *Miranda* warnings; (5) whether the arrest was made in order to obtain consent; (6) whether appellant knew that he could refuse to allow a search; (7) whether the consent was first offered by appellant or was in response to police request; (8) appellant's education, intelligence, and physical condition; and (9) the proximity of the consent to the arrest, since an intervening time period can provide a degree of attenuation of the taint.

*Frierson v. State*, 839 S.W.2d 841, 851 (Tex.App.--Dallas 1992, pet. ref'd). The question we address is: "Could a rational trier of fact conclude, by clear and convincing evidence . . . based upon all of the facts and logical inferences that can be drawn from those facts, and in the light most favorable to the prosecution, that [Schwalm] voluntarily consented to the search?" *Meekins*, 340 S.W.3d at 460 n.24. "If a rational trier of fact could so conclude (even though other rational triers of fact might disagree) then the trial judge's factfinding must stand." *Id.*

Here, Appellant relies exclusively on his argument that Detective Leary threatened to charge Schwalm with a crime and damage the security door if she did not consent to the search. The strongest evidence supporting a finding that Schwalm voluntarily consented is the written consent to search form she signed. The State presented evidence that Schwalm indicated that she wanted officers to search the house. Detective Leary admitted to making a statement regarding the fact that if he obtained a warrant they would have to bust the door in and, if they found "some illegal stuff, Schwalm could be charged."

Examining the arguments and evidence presented at the suppression hearing, we hold that the trial judge made a reasonable ruling based on the totality of the circumstances. *See Meekins*, 340 S.W.3d at 465. Viewing the totality of the circumstances in the light most favorable to the trial judge's ruling, we conclude that the trial judge did not abuse his discretion by finding that Schwalm voluntarily consented to the search of Appellant's home. We overrule Issue One.

## IMPROPER JURY ARGUMENT

In Issue Three, Appellant argues that the prosecutor engaged in an improper closing argument during the guilt phase of the trial. He complains of the following excerpt:

> Gilfour is a 15-year veteran on the Fort Worth police department force. Don't you think if he had done something wrong, if he had a habit of lying or making stuff up, that [Appellant] would have a stack of internal affairs documents here?

Appellant objected and stated, "Your Honor, I object. That's an inappropriate argument." The prosecutor continued: "Who is under credibility here? If we couldn't trust Gilfour, you know she would have brought that up. You know if he was a dirty cop, we would know." Appellant objected again and argued that this was an "inappropriate closing arguments." The court responded, "It's just final arguments, [counsel]. It's overruled."

We hold that these objections were too general to preserve error for purposes of this appeal. Additionally, the record does not indicate that the trial court or opposing counsel understood the nature of the objections. *See Miles v. State*, 312 S.W.3d 909, 911 (Tex.App.--Houston [1st. Dist.] 2010, pet. ref'd)(holding "objection that the prosecutor was making an 'improper argument' is insufficient to preserve error . . . because it is a general objection and the trial court made no statements that would indicate it understood the nature of the objection"). Even if Appellant's objections were sufficient, his argument fails because the prosecutor's statement was a proper answer to arguments of opposing counsel.

"Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Berry v. State*, 233 S.W.3d 847, 859 (Tex.Crim.App. 2007). To determine whether jury argument is improper, we look to the entire record and assess the argument in context." *See Gaddis v. State*, 753 S.W.2d 396, 398

(Tex.Crim.App. 1988); *Cole v. State*, 194 S.W.3d 538, 544 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd); *Van Zandt v. State*, 932 S.W.2d 88, 93 (Tex.App.--El Paso 1996, pet. ref'd). "If a jury argument exceeds the bounds of proper argument, it is not reversible error, unless, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects into the trial new facts harmful to the accused." *Harris v. State*, 996 S.W.2d 232, 237 (Tex.App.--Houston [14th Dist.] 1999, no pet.). "However, if the State's argument falls within one of the four permissible categories previously enumerated, it does not constitute error." *Lange v. State*, 57 S.W.3d 458, 468 (Tex.App.--Amarillo 2001, pet. ref'd).

The prosecutor's statements, taken in context, were a proper answer to the Appellant's arguments. After Appellant objected, the prosecutor continued:

> It's credibility, folks. You're totally allowed to determine that. That's completely within your province as jurors. You can completely consider that. It's completely appropriate. We don't have one shred of evidence that he's not telling you exactly what he saw and, furthermore, why would someone with a 15-year employment throw it away and flush it down the toilet for a case that only involves 1.59 grams of heroin? It's not worth it. It doesn't make any sense. I suggest you can completely believe what he says.

This argument was a response to Appellant's multiple assertions that Officer Gilfour was lying: "Hello, Officer Gilfour's got x-ray vision . . . . It is impossible for Officer Gilfour to have seen what he saw . . . . Folks, Officer Gilfour did not see this bag of alleged controlled substances in plain view in Mr. Walker's possession. It's a physical impossibility."

The State's closing argument constituted a response to Appellant's attack upon Officer Gilfour's credibility. *See, e.g.*, *Bryant v. State*, 923 S.W.2d 199, 212 (Tex.App.--Waco 1996, pet. ref'd)(noting that when the defense attacks the veracity of a witness, the prosecution may comment on the witness's credibility and the risk of committing perjury); *McDuffie v. State*, 854 S.W.2d 195, 217 (Tex.App.--Beaumont 1993, pet. ref'd)(finding that where a defendant argues

about flaws and inconsistencies in the evidence or when he attacks the integrity of the State's witnesses, the State is permitted to "stick up" for its witnesses and rehabilitate their credibility in the eyes of the jury); *Stewart v. State*, No. 05-02-01005-CR, 2003 WL 1735150, at *5 (Tex.App.--Dallas 2003, pet. ref'd)(holding prosecutor's questions why appellant had not called anyone to testify that the state's witness was untruthful was a specific response to defense counsel's argument as to witness's credibility). We overrule Issue Three.

## IMPROPER QUESTION DURING PUNISHMENT PHASE

In Issue Four, Appellant complains that the trial court erred when it allowed the prosecution to ask a question based upon a fact not in evidence that suggested an unproven, extraneous offense. The State asserts that Appellant has waived this complaint. We agree.

Appellant argues that, "[b]y asking the question, the prosecutor implied that not only was appellant using drugs, but that he was dealing drugs." Appellant further complains that this single reference "suggest[ed] without evidence that the appellant was dealing drugs as a business," and "could well have added significant time to the jury's punishment."

To preserve error, the objecting party must continue to object each time the objectionable evidence is offered. *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex.Crim.App. 1999). Here, the prosecutor made several references to Appellant dealing drugs but Appellant did not object to any of the subsequent mentions of this allegedly inadmissible evidence. Consequently, his complaint has been waived. *See Fuentes*, 991 S.W.2d at 273. We overrule Issue Four. Having overruled all Appellant's arguments on appeal, we affirm the trial court's judgment.

September 5, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)